avoidance power of section 547(b). Therefore, we find that Morris's reliance on the alternative holding of the bankruptcy court is misplaced.

## VI. Valuation of the Property

Finally, Poss challenges the bankruptcy court's grant of summary judgment for Morris by questioning the use of an appraised value of $100,800 for the property. He maintains that $167,250, representing the acquisition cost of the property over fifteen years ago ($17,500 for the land plus $149,750 for the building), would more accurately capture its value than Morris's appraisal. Resolution of this issue requires further development of the record and is therefore inappropriate for consideration for the first time on appeal.

## VII. Conclusion

For the foregoing reasons, we find that Ohio law impressed a constructive trust on the property in favor of Poss prior to the day on which Morris filed her bankruptcy petition. We also hold that a constructive trust does not constitute a voidable preference under the bankruptcy code. These conclusions necessitate reversal of the judgment of the bankruptcy court. We therefore remand this case for further proceedings not inconsistent with this opinion.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0264P (6th Cir.)
File Name: 01a0264p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: MARILYN E. MORRIS,
                    *Debtor.*

_____

JOHN POSS,
                    *Appellant,*

v.

MARILYN E. MORRIS,
                    *Appellee.*

No. 99-4454

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 98-02963—Jack B. Streepy, Magistrate Judge.

Submitted: December 1, 2000

Decided and Filed: August 13, 2001

Before: WELLFORD, SILER, and BATCHELDER,
Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Alexander Jurczenko, Cleveland, Ohio, for Appellant. James B. Dietz, Carl D. Rafoth, FRIEDMAN &

RUMMELL COMPANY, L.P.A., Youngstown, Ohio, for Appellee.

——————————

## OPINION

——————————

ALICE M. BATCHELDER, Circuit Judge.  Marilyn E. Morris, a debtor in Chapter 13 bankruptcy proceedings, initiated an adversary proceeding against John Poss, a creditor, in the United States Bankruptcy Court for the Northern District of Ohio at Youngstown.  She sought a determination of the ownership interests of the estate and Poss in certain real property.  Morris moved for summary judgment, but Poss failed to respond after seeking an extension of the time to reply.  The bankruptcy court granted the motion, and Poss appealed to the United States District Court for the Northern District of Ohio.  In the district court, the parties consented to the exercise of jurisdiction by a magistrate, who affirmed the decision of the bankruptcy court. This appeal followed.  We now reverse.

### I. Statement of Facts

#### A. The Underlying Transactions and Initial State Court Judgment

This appeal arrives before us with a tangled history of multiple, concurrent legal proceedings arising from two transactions over fifteen years ago involving a certain plot of land.  In 1982, Morris wished to relocate her precision tool manufacturing business, the Fine Cut Diamond Tool Company, from Newbury, Ohio, to Rock Creek, Ohio, but was unable to secure conventional financing.  Poss, a longtime friend, agreed to loan Morris $17,500 to purchase a 17.5-acre parcel on Rome-Rock Creek Road (the "property") for the business, and Morris took title to the property.  Poss did not execute a mortgage on the property, and the only evidence of the loan was a cognovit note that provided for repayment over fifteen years.  Although Morris made some

parties' interests in the disputed property changed when Poss and Morris entered into the settlement agreement.  At that point Judge Yost determined that Morris no longer retained equitable title to the property.  We have already concluded that by imposing a duty on Morris to convey the property this agreement impressed the property with a constructive trust by operation of law.  Although our research has failed to locate authority directly on point, we think that Ohio law creates a constructive trust at the moment the law imposed an equitable duty on Morris to convey the property.  Whether in this case that duty arose when the parties entered into the settlement agreement or the common pleas court adopted the settlement as its order, it is clear that Ohio law impressed the property with a constructive trust long before Morris filed her petition for bankruptcy on September 8, 1995.

Moreover, the avoidance power of the trustee only reaches "an interest of the debtor in property." 11 U.S.C. § 547(b). Although the statute does not define this term, the Supreme Court has interpreted it to mean "that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier*, 496 U.S. at 58.  Under section 541(d), "property of the estate" includes all property to which the debtor holds legal title, except "to the extent of any equitable interest in such property that the debtor does not hold."  "Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'  Nor is such an equitable interest 'property of the debtor' for purposes of § 547(b)." *Begier*, 496 U.S. at 59.  Other circuits have held that this reasoning applies as fully to constructive trusts as express trusts, *e.g.*, *Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.)*, 104 F.3d 293, 295 (9th Cir. 1997), as have we in dicta. *McLemore v. Third Nat'l Bank in Nashville (In re Montgomery)*, 983 F.2d 1389, 1393 (6th Cir. 1993). Because the property had been impressed by operation of state law with a constructive trust more than ninety days prior to the filing of Morris's petition for bankruptcy, equitable title in the property never became property of the estate, and Morris holds no interest in the property subject to the

to give proper consideration and deference to the proceedings in state court and erred by not specifically enforcing the settlement by conveying the property. Accordingly, we have no occasion to consider them.

## V. Preferential Transfer

Morris contends that the bankruptcy court correctly held in the alternative that enforcement of the settlement through the *ex parte* order occurred within ninety days of her petition and, since Poss has failed to rebut the statutory presumption that she was insolvent during this period, the order is void as a preferential transfer. This argument fails because the constructive trust in this case arose more than ninety days before Morris filed for bankruptcy and, in any event, a constructive trust is not a preferential transfer.

Section 547 of the bankruptcy code permits a trustee to avoid certain preferential transfers made in the ninety days prior to the filing of a bankruptcy petition. We note that section 547(b) requires a transfer before it can operate. Because the Ohio Court of Appeals set aside the *ex parte* order, it cannot form the basis for finding a preferential transfer here. Therefore, Morris can only prevail on the basis of the alternative holding of the bankruptcy court if a constructive trust arose in this case in the ninety days prior to the filing of Morris's bankruptcy petition and the property held in constructive trust falls within the preferential transfer statute.

In *Newpower* we recognized that state law determines the effective date of a judgment obtained by a creditor in a state court proceeding initiated prepetition but concluded postpetition. *Newpower*, 233 F.3d at 937. Under Ohio law, "where a person holding title to property is subject to an *equitable duty* to convey it to another" a constructive trust arises by operation of law and attaches to that property. *Croston*, 247 N.E.2d at 767 (quoting RESTATEMENT OF THE LAW OF RESTITUTION § 160 (1969)). *See also McCafferty*, 96 F.3d at 198; *Bilovocki*, 405 N.E.2d at 340. In the final judgment of the state courts, Judge Yost determined that the

payments to Poss, none of those payments were in accordance with the terms of the note.

Soon, Morris convinced Poss to finance the construction of a building to house her business. Without taking a mortgage, promissory note, or any security interest for the loan, he advanced an additional $149,750. Instead, with an eye toward maximizing his tax position, Poss leased from Morris, for fifteen years at a nominal rent, the two-and-one-half acres on which the business was to be located. He then constructed the building to Morris's specifications and leased the structure to Morris for fifteen years with a monthly payment intended to amortize the $149,750 with interest over the life of the lease. The structure of this second transaction resulted in an anomalous situation in which Poss owned the building housing Morris's business, Morris owned the land on which the building was situated, and each leased his or her respective interest to the other. Significantly, the agreement did not account for either party's default in making lease payments. Neither Morris nor Poss made lease payments pursuant to this agreement.

By the time Poss and Morris formally executed these leases, Morris had secured a $40,000 loan from Huntington National Bank, without the knowledge of Poss, by pledging the business premises as security and giving the bank a first mortgage on the property. Although Morris had fallen behind on payments under the cognovit note and had not made any payments on the lease, Poss did not pursue a default judgment and offered to postpone commencement of payments for one year. Upon learning of the Huntington Bank mortgage, however, Poss filed suit on the cognovit note in the Ashtabula County Court of Common Pleas and secured a judgment in 1986 of $17,114.18 plus statutory interest and costs. When Morris failed to satisfy the judgment, Poss brought a foreclosure action.

In 1989, Poss brought a second action in common pleas court seeking to recover the lease payments for the building due under the terms of the second transaction. The common

pleas court consolidated this suit with the foreclosure action. After a trial on these consolidated claims in 1992 before Judge Gary Yost, the court found that the remaining balance on the cognovit note was $2,300.17 and that Poss had a valid lien in this amount plus interest. In addition, after offsetting Poss's failure to make lease payments to Morris as agreed, the court entered judgment of $149,750 plus interest for Poss. Therefore, Poss secured judgment in a total amount of $152,050.17 plus interest.

### B. The Settlement Agreement and Further Proceedings

When Poss experienced difficulties enforcing his judgment against Morris, the parties entered into negotiations. At a point when they broke down, Poss filed a forcible entry and detainer action against Morris claiming that her continued possession of the building and the property was unlawful. Shortly after the filing of that suit, in July 1993 the parties executed a settlement agreement. The agreement concluded the forcible entry and detainer action by requiring Morris to vacate the building by January 1, 1994. It further obligated her to convey a specific 7.735-acre parcel to Poss within sixty days. Morris consented to entry of judgment against her in the pending forcible entry and detainer action on the condition that "no order of eviction shall be issued unless [she] fail[s] to comply" with the terms of the settlement agreement. In return, the settlement relieved Morris from liability under the mortgage and judgment lien. In September 1993, Judge Yost entered judgment adopting the agreement and incorporating it as the order of the court to conclude Poss's foreclosure action. Judge Yost's judgment further indicated that Huntington Bank had assigned its mortgage to Poss. The judge in the forcible entry and detainer action similarly adopted the settlement agreement as the judgment of the court.

On the same day Judge Yost adopted the settlement as the judgment of the court, Morris moved for relief from the judgment. Poss countered by seeking enforcement of the settlement. In April 1994, Judge Yost denied Morris's

Ohio law, this contract is enforceable in equity, and because of the availability of equitable relief Morris had a duty to convey the property. Where such a duty exists, a constructive trust arises by operation of law. Additionally, the concluding language of Judge Yost's opinion emphasizing that Morris retained legal ownership of the property reinforces our conclusion that Morris held equitable title in constructive trust for Poss. Similarly, the state court's determination that legal title remained in Morris until such time that Poss pursued enforcement all but says that Poss holds equitable title to the property. Finally, another fact convinces us that this case does not involve an ordinary equitable interest in a conveyance that might arise pursuant to a contract concerning real estate under Ohio law: the "contract" between the parties here is the order of a court. The interest of the Ohio judiciary in ensuring the efficacy of its judgments gives the settlement a heightened basis for equitable relief and calls for imposition of a constructive trust.

Although in *Omegas Group* we said that a constructive trust "does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment 'impressing' defendant's property or assets with a constructive trust," 16 F.3d at 1451, we recognized in *McCafferty* that a constructive trust can arise without a formal judicial decision under Ohio law. This case addresses one of the questions *Newpower* noted remained open following *Omegas Group*, namely whether the bankruptcy court may give effect to a state court judgment obtained postpetition in an action initiated prepetition. We answer that question affirmatively, reaffirming that state law governs the effective date of such a judgment. As we held in *Newpower*, *Omegas Group* does not present a bar to the imposition of a constructive trust on the facts of this case. Therefore, we conclude that the bankruptcy court erred by failing to recognize that Ohio law had impressed the property with a constructive trust in favor of Poss prior to the filing of Morris's bankruptcy petition.

Our decision that a constructive trust arose here moots Poss's additional arguments that the bankruptcy court failed

*Performance* § 112 (1973)) (alteration omitted). Equitable jurisdiction in Ohio extends broadly so that a court may fashion any relief just and appropriate for the circumstances. *Brinkerhoff v. Smith*, 49 N.E. 1025, 1029 (Ohio 1897); *McDonald & Co. Sec., Inc, Gradison Div. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 747 N.E.2d 843, 850 (Ohio Ct. App. 2000) (quoting *Winchell v. Burch*, 688 N.E.2d 1053, 1057 (Ohio Ct. App. 1996)). In other words, under Ohio law a contract for the conveyance of real property falls squarely within the equitable jurisdiction to fashion an appropriate remedy.

Essentially, Ohio courts will use the remedy of constructive trust "where there is some ground . . . upon which equity will grant relief." *Henkle*, 600 N.E.2d at 796 (citing *Croston*, 247 N.E.2d at 768-69). In these situations, Ohio law creates an equitable duty to convey property. *Gabel v. Richley*, 655 N.E.2d 773, 779 (Ohio Ct. App. 1995); *Union Sav. & Loan Ass'n v. McDonough*, 655 N.E.2d 426, 428 (Ohio Ct. App. 1995) (citing *Ferguson*, 459 N.E.2d at 1293); *Bilovocki v. Marimberga*, 405 N.E.2d 337, 340 (Ohio Ct. App. 1979)). Accordingly, every wrongful acquisition or holding of property will not give rise to a constructive trust. For example, breach of contract or failure to pay a debt without more cannot give rise to a constructive trust. *Croston*, 247 N.E.2d at 768-69. Yet, a wrongful acquisition or retention of property cognizable in equity will. *Id.* at 768. Where an equitable duty to convey property exists, it is not necessary for a court to impress a constructive trust by decree. Rather, in Ohio it attaches by operation of law. *McCafferty*, 96 F.3d at 198 (citing *Croston*, 247 N.E.2d at 767, and *Kungle v. Equitable Gen. Ins. Co.*, 500 N.E.2d 343, 348 (Ohio Ct. App. 1985)). *See also Ferguson*, 459 N.E.2d at 1295.

When we apply these principles, it is clear that a constructive trust in favor of Poss attached to the property prepetition. In the final decision of the state courts adjudicating the rights of the parties in the disputed property, Judge Yost found that following the settlement Poss had an enforceable contract for conveyance of the property. Under

motion and disposed of Poss's motion for enforcement by stating that "[Morris] shall comply with her settlement agreement, forthwith. Upon [her] failure to comply with the settlement agreement, [Poss] may undertake any remedy available to him, at law or in equity." Morris appealed, and the Ohio Court of Appeals affirmed on June 30, 1995. Within ten days of this decision from the state court of appeals, Poss obtained an *ex parte* order from the common pleas court enjoining the county recorder to convey the 7.735-acre parcel to himself. When Morris learned of the *ex parte* order, she immediately appealed. Poss returned to court claiming that Morris and her business had failed to comply with the terms of the settlement by not paying rent during the five-month holdover period and moved the court for a writ of restitution. Following an evidentiary hearing, the court agreed that Morris had failed to pay rent and issued the writ, ordering the sheriff to seize the building. Morris appealed both the finding that she failed to comply with the settlement and the issuance of the writ.

### C. Morris's Petition for Bankruptcy under Chapter 13

On September 8, 1995, Morris filed a voluntary petition for bankruptcy under Chapter 13. Her petition listed the 17.5-acre property as having a market value of $100,000, subject to a $1,000 judgment lien obtained by the power company and a $4,000 tax lien in addition to Poss's disputed interest, to which the petition assigned a value of $90,000. Her petition also identified Poss as a secured creditor owed $150,000. The summary of her Chapter 13 plan indicated that Morris resided in a small apartment above the manufacturing facility on the 17.5-acre parcel. Morris moved the bankruptcy court for modification of the automatic stay to pursue her appeals in state court. When no party appeared in opposition, the bankruptcy court granted the motion.

Following the filing of Morris's petition, the bankruptcy court set January 23, 1996, as the bar date for filing a proof of claim against the estate. Poss had actual knowledge of Morris's Chapter 13 petition as well as the bar date. Despite

the court's explicit suggestion to Poss's counsel that he file a proof of claim, he failed to do so even after the court granted him leave to request an extension of the bar date. Once the bar date passed and Poss had not filed a proof of claim, Morris filed an amended Chapter 13 plan, which updated the value of the property by increasing it to $100,800. Most importantly, the amended plan made filing a timely proof of claim and holding an allowed claim prerequisites to receiving a distribution. Understandably, Poss objected to the plan, but because he had not filed a proof of claim the bankruptcy court overruled his objections. Moreover, the court concluded that Poss's objections to the plan did not constitute an informal proof of claim; therefore, the court ruled that his objections were moot and further delay would prejudice the other creditors of the estate. Poss appealed this decision to the Bankruptcy Appellate Panel of the Sixth Circuit, which later dismissed the appeal as premature since the bankruptcy court had not yet entered a final, appealable order.

### D.  Commencement of the Adversary Proceeding

On February 16, 1996, before the bankruptcy court overruled Poss's objections to Morris's amended Chapter 13 plan as moot, Morris filed a "Complaint to Avoid Preference and Avoid Lien Impairing Exemption" with the bankruptcy court. Count One of the complaint sought to set aside the *ex parte* order Poss had obtained in state court on the ground that its enforcement would enable Poss to obtain more from the estate than he otherwise would under the amended Chapter 13 plan. In Count Two, Morris claimed that she was entitled to a $5,000 homestead exemption under state and federal law and that Poss's lien impaired this exemption to the extent that it exceeded the value of the property. The complaint prayed for reconveyance of the property to the estate in bankruptcy and a determination that Poss's secured status be set at $89,800. Morris arrived at this figure by starting with the appraised value of the property, $100,800, and subtracting the tax lien, now set at $5,000, the $1,000 power company lien, and her $5,000 homestead exemption, yielding a sum of $89,800.

and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice.

*Ferguson v. Owens*, 459 N.E.2d 1293, 1295 (Ohio 1984) (per curiam) (quoting 76 AM. JUR. 2D *Trusts* § 221 (1975)). Under this definition, constructive trust is a remedy used by courts for the prevention of fraud, unjust enrichment, or other inequitable conduct. *Peterson v. Teodosio*, 297 N.E.2d 113, 120 (Ohio 1973). Further, the Ohio Supreme Court has counseled the imposition of a constructive trust "where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud." *Ferguson*, 459 N.E.2d at 1295. As a prerequisite to the imposition of a constructive trust, a case must give rise to jurisdiction by a court of equity. *Henkle v. Henkle*, 600 N.E.2d 791, 796 (Ohio Ct. App. 1991). "There must be some specific legal principle or situation which equity has established or recognized[] to bring a case within the scope of the doctrine." *Croston v. Croston*, 247 N.E.2d 765, 768 (Ohio Ct. App. 1969) (quoting *American Univ. v. Forbes*, 183 A. 860, 862 (N.H. 1936)).

Ohio follows the traditional rule of the common law that regards contracts for the conveyance of real property as falling within the jurisdiction of courts of equity because of the inherent inadequacy of any legal remedy. *Ayres v. Cook*, 43 N.E.2d 287, 291 (Ohio 1942) ("[A]n action at law does not ordinarily afford an adequate remedy for refusal to convey real estate in accordance with a valid agreement."), *overruled on other grounds by Sherman v. Johnson*, 112 N.E.2d 326, 332 (Ohio 1953). Although the availability of an equitable remedy such as specific performance depends upon the inadequacy of a remedy at law, "where land is the subject matter of the agreement, the jurisdiction of equity to grant specific performance does not depend upon the existence of special facts showing the inadequacy of a legal remedy in the particular case." *Gleason v. Gleason*, 582 N.E.2d 657, 661 (Ohio Ct. App. 1991) (quoting 71 AM. JUR. 2D *Specific*

with the others and the debtor's bad conduct justified special treatment, *i.e.*, the imposition of a constructive trust by the bankruptcy court.  *In re Omegas* spoke definitively to quash such postpetition scrambling by creditors pushing to a place at the head of the line.

*Kitchen v. Boyd (In re Newpower)*, 233 F.3d 922, 936 (6th Cir. 2000).  In *Newpower*, we held that creditors who had initiated proceedings in state court prepetition may have the automatic stay lifted to pursue their action and that our decision in *Omegas Group* "does not bar the enforcement of such a judgment by the bankruptcy court." *Id.* at 937.  Of course, whether a judgment obtained by a creditor in a state court proceeding initiated prepetition but concluded postpetition following the lifting of the automatic stay has an effective date prior to the filing of a bankruptcy petition is a matter left to state law. *Id.*

Poss's claim that a constructive trust impressed the property prior to the day on which Morris filed her petition for bankruptcy does not fall within the class of typical cases to which *Omegas Group* applies, and in any event *Omegas Group* would present no bar to the bankruptcy court's enforcement of a constructive trust in favor of Poss.  Poss secured a lifting of the automatic stay to allow Judge Yost to determine his prepetition interest in the property as a matter of state law, and recognizing a constructive trust in this case would not interfere with the policy of ratable distribution.  Therefore, our task is to determine whether Ohio law impressed the property in dispute with a constructive trust prior to the time Morris filed her petition.

The Ohio Supreme Court has defined a constructive trust as:

A trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity

### 1.  State Court Proceedings

On March 29, 1996, one day after the bankruptcy court ruled that Poss's objections to the Chapter 13 plan were moot, the Ohio Court of Appeals issued two decisions in response to Morris's appeals of the *ex parte* order and the judgment in the forcible entry and detainer action.  With respect to the former, the court of appeals concluded that the common pleas court erred by issuing the order in an *ex parte* manner and concluded that Poss had never requested conveyance of the specific parcel as the court ordered.  The court of appeals remanded for further proceedings.  As to the latter, finding that the settlement agreement granted Poss the right to immediate possession of the property if Morris failed to satisfy her obligations under the agreement, the appellate court held that the common pleas court had the authority to evict Morris and her business.  Because of the nature of the actions for forcible entry and detainer under Ohio law, however, the court noted that this decision said nothing about the parties' title to the property and only addressed the right to present possession.

### 2.  Default Judgment in the Adversary Proceeding

When Poss failed to file an answer to the complaint initiating this adversary proceeding, the bankruptcy court entered default judgment against him on April 23, 1996.  The next day, without leave of the court, Poss answered,[1] Morris promptly moved to strike, and at a scheduling conference the court granted Poss leave to amend by June 21, 1996. On June 21, Poss filed an amended answer.  Unfortunately, he did so with the bankruptcy court in Cleveland rather than

---

[1] With the benefit of the state appellate court judgments, Poss also prepared a proof of claim for the Chapter 13 proceeding.  Based on those rulings, he asserted that Morris was liable for (1) $8,367 plus 10% interest from April 30, 1993, pursuant to the mortgage Morris gave to Huntington Bank; (2) $2,300.07 plus 10% interest from August 19, 1991, as a judgment lien attributable to the cognovit note; and (3) $149,750 plus 10% interest from June 1, 1984, as a judgment lien arising from the decisions of the Ohio Court of Appeals.

Youngstown. Nonetheless, Morris did not object, and the court accepted the pleading.

In addition to asserting four affirmative defenses to Morris's complaint, the answer asserted three counterclaims. First, Poss sought payment of $8,367 plus 10% interest from April 30, 1990, as the assignee of the Huntington Bank mortgage. Second, Poss asserted that Morris was liable for (1) the judgment of $2,300.07 plus interest from August 19, 1991, following the foreclosure judgment against Morris, and (2) the judgment of $149,750 plus interest from June 1, 1994, as provided in the lease agreement between the parties. Third, Poss sought specific performance of the settlement agreement embodied in the state court judgments. Additionally, the answer raised two third-party complaints. First, Poss claimed that Morris transferred ownership of 750 shares of her business to her son without consideration or reasonably equivalent value with the result that Morris became insolvent. Second, because of this transfer, Poss sought the imposition of a constructive trust on the 750 shares of stock. Therefore, in addition to dismissal of Morris's complaint, Poss sought (1) a determination that he had the first and best lien on the property in a total amount of $160,417.07; (2) specific performance of the settlement agreement and conveyance of the property pursuant to the state court's *ex parte* order; (3) avoidance of the transfer of the 750 shares of stock to Morris's son; and (4) the imposition of a constructive trust on the shares.

### 3. Final Decision of the State Courts

After finally answering the complaint in the adversary proceeding, Poss moved the bankruptcy court for modification of the automatic stay to proceed with the remand from the Ohio Court of Appeals to Judge Yost to determine his ownership interest in the property. Recognizing the state's interest in adjudicating the ownership interests in the property and the importance of settling this issue before concluding the bankruptcy proceedings, the court granted the motion.

petition and state law did not provide a clear answer to whether the circumstances warranted such a remedy. In short, the creditor in *Omegas Group* sought to use an equitable remedy to recover a greater amount of the estate's assets than that to which it would otherwise have been entitled. Reviewing the remedial nature of constructive trusts, we concluded that "a claim filed in bankruptcy court asserting rights to certain assets 'held' in 'constructive trust' for the claimant is nothing more than that: a claim." *Id.* at 1449. Even while stressing that the bankruptcy policy of ratable distribution among creditors conflicts with the constructive trust remedy and counsels its sparing use, *id.* at 1451 (quoting *The Oxford Organisation, Ltd. v. Peterson (In re Stotler & Co.)*, 144 B.R. 385, 388 (N.D. Ill. 1992)), we acknowledged that in certain very limited circumstances not present in *Omegas Group* recognition of a constructive trust would be appropriate. For example, we noted that "[u]nless a court has already impressed a constructive trust upon certain assets . . . the claimant cannot properly represent to the bankruptcy court that he was, at the time of the commencement of the case, a beneficiary of a constructive trust held by the debtor." *Id.* at 1449 (footnote omitted). *See also id.* at 1451 ("We do not address here property already impressed with a constructive trust by a court in a separate proceeding prepetition.").

Since deciding *Omegas Group*, we have clarified several relevant points. We have recognized that imposition of a constructive trust might be appropriate when property in bankruptcy was not subject to distribution to creditors and so did not implicate the rationale of ratable distribution. *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192, 196-97 (6th Cir. 1996) (quoting *Begier v. IRS*, 496 U.S. 53, 58 (1990)). We have also recently made clear that *Omegas Group* addressed the relatively common situation in which a creditor with a claim arising in the ordinary course appeals to the bankruptcy court for preferential treatment:

> Before *In re Omegas*, each of those unsecured creditors would rush to the bankruptcy court to argue that debtor's dealings with it were more egregious than his dealings

## IV.  Constructive Trust

Starting with the proposition that Ohio property law determines the interests of the parties in the real estate at issue, *Unsecured Creditors' Comm. of Highland Superstores, Inc. v. Strobeck Real Estate, Inc. (In re Highland Superstores, Inc.)*, 154 F.3d 573, 578 (6th Cir. 1998) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)); *Demczyk v. Mutual Life Ins. Co. of N.Y. (In re Graham Square, Inc.)*, 126 F.3d 823, 827 (6th Cir. 1997) (citations omitted), Poss further objects to the judgment of the bankruptcy court. Specifically, he maintains that the bankruptcy court erred by failing to recognize that prior to Morris's filing of her petition in bankruptcy a constructive trust had attached to the property for his benefit under Ohio law. Poss relies on 11 U.S.C. § 541(d), which provides:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

With regard to a constructive trust, we have been clear that this section does not authorize bankruptcy courts to recognize a constructive trust based on a creditor's claim of entitlement to one; rather, section 541(d) only operates to the extent that state law has impressed property with a constructive trust prior to its entry into bankruptcy. In *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1451 (6th Cir. 1994), we held that "a creditor's claim of entitlement to a constructive trust is not an 'equitable interest' in the debtor's estate existing prepetition, excluded from the estate under § 541(d)." In that fairly typical bankruptcy proceeding in which the creditor had transferred property to the debtor in the ordinary course of business, allegedly due to the fraud of the debtor, the creditor pressed its case for imposition of a constructive trust in bankruptcy court when no state court proceedings had occurred prior to the filing of the bankruptcy

On April 16, 1997, Judge Yost issued a decision settling the ownership rights of Poss and Morris in the disputed parcel. Reviewing the nature of the agreements between the parties, although "[Morris] ha[d] never complied with the settlement agreement" Judge Yost found:

[F]rom the initial judgment up to the date of the settlement agreement, [Poss's] rights with respect to the subject real property were the same as those of any creditor holding judgment liens which might be satisfied through execution against the property. Following the settlement agreement, [Poss] had an enforceable contract for conveyance of the property to him by [Morris]. Unfortunately [Poss] has never completed either an execution on his judgment liens against the property, or a conveyance of the property in accordance with the settlement agreement prior to [Morris's] filing of the bankruptcy proceedings.

Following the appellate court's reversal of the *ex parte* order, Judge Yost noted that Poss filed no further motions in state court seeking conveyance of the property. Judge Yost concluded that "legal title to the subject real estate has remained in [Morris], and that she had legal ownership of the property at the time of the filing of her petition" for bankruptcy. Finally, Judge Yost stated that Morris's failure to abide by the terms of the settlement entitled Poss "to pursue appropriate enforcement proceedings in this Court, including an application for an order transferring legal title from [Morris] to [himself]. However, until such an order is validly rendered, legal title and ownership of the real estate remains in [Morris]."

### E.  The Bankruptcy Court's Disposition of the Adversary Proceeding

In September of 1998, Morris moved for summary judgment. After seeking an extension of the time to reply, Poss failed to do so. Therefore, the bankruptcy court decided Morris's motion on the basis of the record before it. In a memorandum opinion, the bankruptcy court granted judgment

in favor of Morris in all respects.  Specifically, the court concluded that the action of the Ohio Court of Appeals resolved Morris's request for relief from the conveyance of the property pursuant to the *ex parte* order.  Because of the state appellate court decision and the subsequent determination by Judge Yost that Morris retained legal title to the property, the court agreed that the conveyance was a nullity.  Moreover, the court determined that, even if Poss attempted to enforce this conveyance, Poss secured the *ex parte* order within ninety days prior to the filing of Morris's Chapter 13 petition to satisfy an antecedent debt.  Therefore, federal bankruptcy law created a presumption, not rebutted by Poss, that Morris was insolvent on the date of the conveyance.  As a result, bankruptcy law would void the transfer in any event.  With respect to Poss's secured status, the court valued the real estate at $100,800, granted Morris the homestead exemption, and determined that the tax and power company liens had priority over Poss's judgment lien.  After allowance for these prior claims, the court fixed Poss's secured interest in the estate at $80,490.75 and determined the remainder of his claims to be unsecured to the extent allowable by law.  In conclusion, the court granted Morris judgment on both counts in her complaint and on Poss's counterclaims.  Finally, finding that Poss never timely served the third-party defendants, the court dismissed the third-party complaint.

### F.  The District Court's Opinion

On appeal to the Northern District of Ohio, the parties consented to the exercise of jurisdiction by a magistrate.  On October 26, 1999, the magistrate affirmed the decision of the bankruptcy court in a memorandum opinion and order.  On appeal, Morris sought to bar Poss from raising substantive issues since he failed to oppose her motion for summary judgment in the bankruptcy court.  Reviewing the case law of this circuit, the magistrate concluded that Poss could raise issues for the first time on appeal to the extent that they turned on issues of law and required no factual development.  Proceeding to a consideration of the substantive issues raised on appeal, the magistrate determined that the bankruptcy

banc).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To prevail, the non-movant must show sufficient evidence to create a genuine issue of material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Poss objects to the bankruptcy court's citation of *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989), for the proposition that under the "new era" of summary judgments ushered in by *Anderson*, *Celotex*, and *Matsushita* the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.  *Id.* at 1479-80 (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).  The bankruptcy court interpreted *Street* to mean that "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact."  This reading accords with the burden *Celotex* places on the nonmoving party.  In articulating the standard under Rule 56(c), the bankruptcy court properly stated and applied the governing principles of *Anderson*, *Celotex*, and *Matsushita* as well as this court's synthesis of them in *Street*.  Therefore, this assignment of error lacks merit.

court applied the proper summary judgment standard and having reviewed the history of proceedings between the parties correctly followed the decisions of the Ohio courts. In response to Poss's contention that the bankruptcy court erroneously established the value of the property, the magistrate barred the issue as requiring factual development not appropriately addressed for the first time on appeal.

## II. Issues Raised for the First Time on Appeal

When we review appeals from the decisions of a district court in a case originating in bankruptcy court, our standard of review is somewhat different than normal. We directly review the decision of the bankruptcy court rather than the district court's review of the bankruptcy court's decision. *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 607 (6th Cir. 2000) (citation omitted). *See also In re Brown*, 248 F.3d 484, 486-87 (6th Cir. 2001). "In appeals from the decision of a district court on appeal from the bankruptcy court, the court of appeals independently reviews the bankruptcy court's decision, applying the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law." *In re Madaj*, 149 F.3d 467, 468 (6th Cir. 1998) (internal quotations, citations, and alterations omitted). When reviewing mixed questions of law and fact, we break the question down into its constituent elements and apply the appropriate standard of review to each. *Investors Credit Corp. v. Batie (In Re Batie)*, 995 F.2d 85, 88 (6th Cir. 1993). Therefore, because a grant of summary judgment presents a pure question of law, the district court reviews the bankruptcy court's grant of summary judgment de novo, as do we in turn. *Id.* at 88-89.

Before we proceed to review the bankruptcy court's grant of summary judgment, however, we must confront the threshold issue of the effect of Poss's failure to respond to the motion for summary judgment. As a general rule, appellate courts do not consider any issue not passed upon below. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Morris argues that Poss has forfeited his opportunity to raise substantive issues for the first time on appeal and that no extraordinary

---

warranting departure. *Pinney Dock*, 838 F.2d at 1461 (quoting *Hormel*, 312 U.S. at 557). We also *may* hear an issue for the first time on appeal if doing so would serve an overarching purpose other than simply reaching the correct result in this case. *Foster*, 6 F.3d at 408 (citations omitted). Finally, we *should* address an issue presented with sufficient clarity and requiring no factual development if doing so would promote the finality of litigation in this case. *Pinney Dock*, 838 F.2d at 1461 (citing *Alexander*, 565 F.2d at 1370-71). *See also United States v. Butler*, 207 F.3d 839, 849-50 (6th Cir. 2000). Reviewing Poss's arguments, we conclude that he has presented legal issues requiring no further factual development with sufficient clarity to fall within the *Pinney Dock* exception. Because our consideration of these issues will aid in the resolution of Morris's bankruptcy petition and promote finality in the years of rancorous litigation between the parties, we follow the district court in proceeding to address Poss's arguments to the extent they require no additional factual development. We do so mindful that we risk excusing the failure of Poss's attorney to respond to Morris's motion for summary judgment after requesting an extension to do so and seeking to set aside the default judgment entered against him in this matter. *Pinney Dock* counsels that we address the issues in this case, nonetheless, and we note the availability of remedies for this sort of performance and the discretion of lower courts to sanction such behavior.

## III. The Bankruptcy Court's Summary Judgment Standard

Poss challenges the bankruptcy court's grant of summary judgment by arguing that the court used an improper standard that did not require it to review the entire record. Under Federal Rule of Bankruptcy Procedure 7056, Rule 56(c) of the Federal Rules of Civil Procedure governs motions for summary judgment in adversary proceedings in bankruptcy court. We review a grant of summary judgment de novo, using the same standard under Rule 56(c) as the lower court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en

circumstance warrants a departure from the general rule. Additionally, she contends that the issues Poss does raise require further factual development properly left to the bankruptcy court. In response, Poss urges us to follow the district court by considering the issues he raises to the extent they clearly present issues of law.

The Supreme Court has declined to provide guidance to the courts of appeals regarding the propriety of enforcing the general rule. In *Singleton*, two physicians challenged the constitutionality of a Missouri law denying Medicaid coverage for abortions that were not medically necessary. In response to a pre-answer motion to dismiss for lack of standing, the physicians attached affidavits averring that they performed abortions and had been denied Medicaid reimbursement pursuant to the Missouri law. Finding that the physicians lacked standing, the district court dismissed, but the Eighth Circuit reversed and proceeded to consider the case on the merits. The Supreme Court chastised the Eighth Circuit for going beyond the standing issue since the state had only filed a pre-answer motion to dismiss and had not addressed the merits of the suit in any pleading. *Id.* at 119-20. In this context, the Court articulated the general rule that "a federal appellate court does not consider an issue not passed upon below." *Id.* at 120. As a rationale, the Court explained that the rule is "essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues and in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." *Id.* (citing *Hormel v. Helvering*, 312 U.S. 552, 556 (1941) (alterations omitted)). Noting that in certain circumstances, such as where proper resolution is beyond any doubt or "where injustice might otherwise result," an appellate court could properly consider issues not passed on below, the Court left the matter of the types of issues appropriate for consideration for the first time on appeal to the discretion of the courts of appeals. *Id.* at 121 (citing *Turner v. City of Memphis*, 369 U.S. 350 (1962), and quoting *Hormel*, 312 U.S. at 557) (internal quotations omitted).

Our leading case on the matter is *Pinney Dock & Transport Co. v. Penn Central Corp.*, 838 F.2d 1445 (6th Cir. 1988). There, in the context of a challenge to a party's standing to raise certain antitrust claims, we identified the general rule as an accepted practice or rule of procedure rather than a jurisdictional bar to hearing issues for the first time on appeal. *Id.* at 1461 (quoting *Hormel*, 312 U.S. at 557). We identified the circumstances meriting a departure from the general rule. "Deviations are permitted in exceptional cases or particular circumstances, or when the rule would produce a plain miscarriage of justice." *Id.* (quoting *Hormel*, 312 U.S. at 557-58) (internal citations and quotations omitted). Additionally, we determined that we should address an issue for the first time on appeal "to the extent the issue is presented with sufficient clarity and completeness and its resolution will materially advance the progress of . . . litigation." *Id.* (citing *Alexander v. Aero Lodge No. 735*, 565 F.2d 1364, 1370-71 (6th Cir. 1977)).

In subsequent cases, we have reiterated that the exceptions to the general rule are narrow and intended to promote finality in litigation. *See, e.g.*, *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993). In addition to the promotion of finality, we may consider an issue not presented to a district court when doing so serves "an over-arching purpose beyond that of arriving at the correct result in an individual case," such as when the state of the law is uncertain. *Id.* at 408 (citations omitted). We have typically applied the "*Pinney Dock* exception" when the issue raised for the first time on appeal involves a question of law that requires no additional factual development. *E.g.*, *Semaan v. Allied Supermarkets, Inc. (In re Allied Supermarkets, Inc.)*, 951 F.2d 718, 725-26 (6th Cir. 1991).

Against this background, the following principles guide our decision whether to address the arguments Poss raises on appeal. First, we *may* deviate from the general rule if this is an exceptional case, if declining to review issues for the first time on appeal would produce a plain miscarriage of justice, or if this appeal presents a "particular circumstance"