**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 11a0277n.06

No. 09-3514

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Apr 28, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| RODNEY CARSON, | ) | |
| | ) | |
| **Petitioner–Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| STUART HUDSON, | ) | |
| | ) | |
| **Respondent–Appellee.** | ) | **O P I N I O N** |
| _____ | ) | |

**Before: DAUGHTREY, MOORE, and CLAY, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Rodney Carson is a habeas petitioner who

has been convicted of aggravated murder. He is also a pro se litigant navigating a maze of judicial

procedure. We granted a certificate of appealability on the issue of whether Carson's trial counsel

was ineffective for letting the government introduce statements that police obtained after Carson said

"My lawyer's name is Sarah Beauchamp so --" and an officer cut off his sentence. Carson raised this

Fifth Amendment *Miranda* claim to the Ohio Court of Appeals, in his federal habeas petition, and

in his appeal to this court. The government focuses our attention on where Carson *failed* to raise the

claim: in his objections to the magistrate judge's Report and Recommendation.

Carson characterizes the government's brief as going "on and on and on endlessly about what

the appellant did not do, which has absolutely nothing to do with w[]hether or not [Carson's]

constitutional rights were protected by those sworn to do so." Reply Br. at 5. Carson "has a 10th

grade education, and no experience with police interrogation, or criminal trials, to know how to protect his rights." *Id.* Undoubtedly, it can be challenging for pro se prisoners such as Carson to preserve their claims. Nevertheless, because Carson's case is not the exceptional sort for which we excuse waiver, we conclude that Carson has waived the claim on which we granted a certificate of appealability. We therefore **AFFIRM** the district court's denial of habeas relief.

## I. BACKGROUND

On March 14, 2003, Eric Rawlings was shot twice outside the C & S Lounge in Columbus, Ohio. Rawlings died from a gunshot wound to the back of his head. While walking home from the C & S Lounge that same day, Henry Harris saw Carson riding a yellow bike at 5:30 p.m. William Bentley, the only person who observed the shooting, watched the shooter escape the scene on a yellow bike. Bentley then saw the shooter use a pay phone down the street, where the shooter "yell[ed] for someone to come and get him." *State v. Carson*, No. 05AP-13, 2006 WL 1351493, at *1 (Ohio Ct. App. May 16, 2006). Bentley called 911 at 8:31 p.m., immediately after the shooting. Dan Merce heard the shooting. When he turned around to see what had happened, Merce observed one man on the ground and another man riding away on a yellow bike. Christopher McCoy and Mike Baber witnessed a man leaving the phone booth on a yellow bike after yelling "[c]ome fucking get me out of here. I did what I had to do." *Id.* at *2. "Telephone records confirmed that an outgoing call was placed from the pay phone near the scene to a toll free number registered to Carolyn Clark. . . . The call was placed at 8:36 p.m." *Id.* Clark lived with Richard Carson, the appellant's father, and "the toll free number was given to Richard Carson's children." *Id.*

2

Police interrogated Carson and other suspects. A videotape from November 8, 2003 documented Detective Carney reading Carson his *Miranda* rights, followed by this conversation:

> Detective Carney: Okay. Do you understand all that?
> Defendant Carson: Yeah.
> Detective Carney: Do you have any questions regarding that?
> Defendant Carson: (Witness shook head.)
> Detective Carney: Okay.
> Defendant Carson: *My lawyer's name is Sarah Beauchamp so --*
> Detective Carney: Okay. Do me a favor and read the waiver section. It doesn't mean you agree. It just means you've read it.
> Defendant Carson: So ya'll must really got some evidence to hold me, man, right? (Inaudible) -- you know, let's just get to the -- I don't need all this shit.
> Detective Carney: Well, I still have to have you read that so when we get into court --
> Defendant Carson: I understand it, man.
> Detective Carney: You understand it.
> Defendant Carson: Yeah, I understand it, man.
> Detective Carney: You're willing to make a statement. Okay. Sign right there saying you read it, you understood it.
> (Defendant signed document.)
> Detective Carney: Okay. You know pretty much what this is all about.
> Defendant Carson: No. No, no, no, no, no. Wait a minute. Wait a minute. Wait a minute.
> Detective Carney: You know this is all about that homicide that happened on Fifth.
> Defendant Carson: Wait a minute. Wait a minute. Wait a minute. No. No, I don't know. I don't know -- I don't know what ya'll want from me, man, but --
> Detective Carney: Well, when the detective spoke to you before, he explained what we had against you. We have witnesses placing you at the scene.

App'x at 63–65 (08/16/04 Tr. at 55–57) (emphasis added). Carson then answered the detective's questions.

On November 18, 2003, a state grand jury indicted Carson on one count of aggravated murder with two firearm specifications and one count of having a weapon under disability. Before trial, Carson unsuccessfully moved to suppress the videotaped interview on the ground that Carson's

3

"frustration and exasperation" and his "threat[s] to sue the police" would be "prejudicial and . . . confuse the jury." App'x at 19 (08/16/04 Tr. at 11). Carson did not object on the basis that his statements at the interview are inadmissible under *Miranda v. Arizona*, 384 U.S. 436 (1966). To "attack [Carson's] credibility" at trial, the state introduced statements from the November 8 interview "regarding [Carson's] memory of when he used the pay phone and his memory of the crime scene." R. 8, Ex. 16 (Def. Brief to Ohio Ct. of Appeals at 11). A jury convicted Carson of aggravated murder with two firearm specifications, for which he is serving a prison term of twenty years to life. After a bench trial, a judge found Carson guilty of having a weapon under disability, which adds a mandatory consecutive prison term of three years.

The trial court denied two motions for a new trial, the Ohio Court of Appeals affirmed Carson's conviction, and the Ohio Supreme Court denied leave to appeal. Later, Carson filed a federal habeas petition raising several claims. Of relevance to this appeal, Carson argued that the state violated his Fifth Amendment right to counsel by admitting his responses to questions that the police asked after Carson stated to the police, "My lawyer's name is Sarah Beauchamp so --." Carson also claimed ineffective assistance of counsel because his lawyer did not move to suppress or object to the introduction of his statements to police on the basis that introducing the statements violated his *Miranda* rights. The magistrate judge recommended that the district court deny relief on all claims. The magistrate judge reasoned that the Ohio Court of Appeals did not unreasonably apply Fifth Amendment precedent when it found that Carson did not clearly and unequivocally invoke his right to counsel. R. 46 (Report & Recommendation at 29–34). As a result, the magistrate

4

judge found that Carson's corollary claim of ineffective assistance "plainly lacks merit." *Id.* at 44

(quoting the Ohio Court of Appeals, which explained that trial counsel could not have changed the

outcome of the trial by raising a meritless claim). The district court adopted the magistrate judge's

recommendation in its entirety and declined to issue a certificate of appealability.

## II. DISCUSSION

We granted a certificate of appealability on one issue: "whether Carson received ineffective

assistance of counsel when counsel failed to object [to] or move to suppress Carson's statement

made allegedly in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966)[,] after he invoked his right

to counsel." On appeal, the government has made only one argument in response: Carson waived

his right to appellate review of that issue because he did not object on the same basis to the

magistrate judge's Report and Recommendation. We agree.

Ordinarily, parties who do not "substantially prevail[] in a magistrate judge's

recommendation" must "file objections with the district court or else waive [the] right to appeal."

*Souter v. Jones*, 395 F.3d 577, 585–86 (6th Cir. 2005). "'[O]nly those specific objections to the

magistrate's report made to the district court will be preserved for appellate review.'" *Id.* at 585

(quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)). The

Supreme Court has affirmed our waiver rule in the face of a due process challenge, "at least when"

litigants have "clear notice" of the rule "and an opportunity to seek an extension of time for filing

objections." *Thomas v. Arn*, 474 U.S. 140, 155 (1985). Motivating the waiver rule is the value of

judicial economy:

> The Sixth Circuit's rule . . . prevents a litigant from "sandbagging" the district judge by failing to object and then appealing.  Absent such a rule, any issue before the magistrate would be a proper subject for appellate review.  This would either force the court of appeals to consider claims that were never reviewed by the district court, or force the district court to review every issue in every case, no matter how thorough the magistrate's analysis and even if both parties were satisfied with the magistrate's report.

*Id.* at 147–48.  We have enforced the waiver rule against pro se litigants.  *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006); *Kensu v. Haigh*, 87 F.3d 172, 176 (6th Cir. 1996); *see also Peoples v. Hoover*, 377 F. App'x 461, 463 (6th Cir. 2010) (unpublished opinion) (collecting cases).

In this case, the Report and Recommendation notified Carson that "failure to object . . . operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*." R. 46 (Report & Recommendation at 50).  Although Carson filed objections, his objections did not mention his police interrogation, the *Miranda* warnings that he received, the Fifth Amendment, ineffective assistance of counsel with regard to his Fifth Amendment claim, or his statements that the state introduced at trial.

The waiver rule "plainly is not a jurisdictional rule," however.  *Souter*, 395 F.3d at 585.  We "may excuse the default in the interests of justice."  *Thomas*, 474 U.S. at 155.  More specifically, from our past cases, we have distilled three circumstances in which we may or should address an issue even though it was not brought to the district court's attention.  "First, we *may* deviate from the general [waiver] rule if this is an exceptional case, if declining to review issues for the first time on appeal would produce a plain miscarriage of justice, or if this appeal presents a 'particular circumstance' warranting departure."  *Poss v. Morris (In re Morris)*, 260 F.3d 654, 664 (6th Cir.

2001) (citing *Pinney Dock & Trans. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir.), *cert. denied*, 488 U.S. 880 (1988)). Cases meet this test when, for example, the argument becomes available because the Supreme Court decides a relevant case "after the district court entered judgment," *United States v. Chesney*, 86 F.3d 564, 568 (6th Cir. 1996), *cert. denied*, 520 U.S. 1282 (1997), or when "the district court's disposition . . . was based on an erroneous interpretation of [a] statute" and "the damages awarded . . . appear disproportionate to [the party's] conduct," *Dorris v. Absher*, 179 F.3d 420, 425–26 (6th Cir. 1999).

Second, "[w]e also *may* hear an issue for the first time on appeal if doing so would serve an overarching purpose other than simply reaching the correct result in this case." *In re Morris*, 260 F.3d at 664 (citing *Foster v. Barilow*, 6 F.3d 405, 408 (6th Cir. 1993)). This condition is satisfied when "the state of the law is uncertain." *Foster*, 6 F.3d at 408; *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 257 (1981) ("The very novelty of the legal issue at stake counsels unconstricted review."). Another factor that would favor review is if "[t]he specific challenges that [the party] raises are . . . certain to recur." *United States v. Martin*, 438 F.3d 621, 628 (6th Cir. 2006); *see also City of Newport*, 453 U.S. at 257 (reviewing an issue that was "important and . . . likely to recur").

Third, "we *should* address an issue presented with sufficient clarity and requiring no factual development if doing so would promote the finality of litigation in this case." *In re Morris*, 260 F.3d at 664 (citing *Pinney Dock*, 838 F.2d at 1461). Issues that "are wholly legal" do not require factual development. *United States v. Pickett*, 941 F.2d 411, 415 (6th Cir. 1991). An issue is presented with

7

sufficient clarity when "[b]oth parties have extensively briefed the issues at stake." *Id.*; *see also United States v. Ellison*, 462 F.3d 557, 560–61 (6th Cir. 2006). However, even failure of the potentially prejudiced party to brief the issue on appeal "is not dispositive" when the issue is "sufficiently straightforward" and the other party's "neglect . . . in not raising the issue below [wa]s minimal," such as in the case of an intervening Supreme Court decision. *Mayhew v. Allsup*, 166 F.3d 821, 823–24 (6th Cir. 1999).

These three categories are not mutually exclusive and the schematic that *In re Morris* draws is not one that our court always follows. *See, e.g., Ellison*, 462 F.3d at 560–61 (mixing categories one and three by describing a case as exceptional *because* the issue was "presented with sufficient clarity and completeness" and "require[d] no further development of the record" (internal quotation marks omitted)).

Applying these categories to Carson's case, we conclude that we should not excuse his waiver. First, his case is not exceptional, and denial of review will not result in a plain miscarriage of justice. Carson might have invoked his Fifth Amendment right to counsel by mentioning his attorney's name before being cut off. As a result, it is conceivable that his attorney's failure to make the *Miranda* argument was ineffective assistance. Carson, however, did not invoke his right to counsel so clearly that, under deferential habeas review of his attorney's performance, we could deem the state court's decision a plain miscarriage of justice. There is no relevant intervening judicial decision, no misunderstanding on the part of the district court or state court about the *Miranda* rule itself, and no other comparable circumstance. Second, addressing Carson's claim does

8

not serve any overarching purpose beyond possible error-correction for his case. The way that Carson referenced his attorney and the officer's interruption make Carson's case unique from others that we have seen. Because nearly every case has unique *facts*, however, unique facts cannot always be a reason to excuse waiver. The state of the *law* in the *Miranda* context is not especially unclear. Moreover, there is no reason to think that other defendants will invoke the same language that Carson did and be similarly interrupted such that our decision would resolve a recurring problem. Third, the issue of whether saying "My lawyer's name is Sarah Beauchamp so --" invokes the Fifth Amendment right to counsel has not been presented to us with any clarity. For these reasons, none of the three exceptions to the waiver rule apply, and we will not excuse Carson's waiver of appellate review.

### III. CONCLUSION

Although Carson objected to the magistrate judge's Report and Recommendation, he did not object to the magistrate judge's resolution of his claim that his trial lawyer's failure to make a *Miranda* argument was ineffective assistance. Carson thereby waived his right to appeal the issue after the district court adopted the magistrate judge's Report and Recommendation. Finding no reason to excuse Carson's waiver, we **AFFIRM** the district court's denial of habeas relief.