NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0804n.06

No. 10-5761

FILED
*Jul 25, 2012*
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DAVID L. MOORE, et al., | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Plaintiffs-Appellants, | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| JOHN DEERE HEALTH CARE PLAN, INC., | ) | O P I N I O N |
| et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:     McKEAGUE and WHITE, Circuit Judges; and BARRETT, District Judge.[*]

**McKeague, Circuit Judge.** Dr. David L. Moore ("Moore") appeals the district court's grant of summary judgement in favor of John Deere, a health maintenance organization. Moore argues that John Deere was not entitled to statutory immunity under the Health Care Quality Improvement Act ("HCQIA") and the Tennessee Peer Review Law ("TPRL"). As such, Moore asserts that his state law claims for defamation, breach of contract, tortious interference with business relationships, and an injunction remain viable. Because the district court correctly determined that the HCQIA and TPRL applied, however, John Deere enjoys statutory immunity with respect to all of Moore's claims for damages. To the extent that Moore's claims are understood as a request for injunctive relief, we find that the district court appropriately granted summary judgment. As such, we **AFFIRM**.

_____

[*] The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

## I. BACKGROUND

Factual Background

Moore and his wife Sandra, were the sole officers, directors and shareholders of Community Health Care Clinics, Inc. ("CHCCI"), a "for-profit" corporation that is a named plaintiff in this action. R. 39-1, Pl. Dep. at 95. CHCCI operated four clinics staffed by four doctors, including Moore, and five nurse practitioners. *Id.*

John Deere is a health maintenance organization that "provides health care services to its members and that follows a formal peer review process for furthering quality health care." Appellee's Br. at 8. John Deere Health Care is a third-party administrator that "provides administrative services to employer groups, including John Deere, that is also a party to Moore's TennCare Provider Agreement." *Id*. at 4.

Moore was a party to two contracts with John Deere: (1) a "TennCare Network Physician Provider Agreement Between John Deere Health Plan, Inc. and TennCare Network Physician Provider," and (2) a "Network Physician/Provider Agreement." (collectively, "Moore's contracts") R. 39-3. The CHCCI received income from both of Moore's contracts. Although there were numerous service providers at CHCCI throughout the tenure of Moore's contracts, all of John Deere's payments for services rendered by these providers were made to CHCCI. R. 39-2, Steffens Aff. at 16.

Beginning in 2001, John Deere received numerous complaints from its members regarding the quality of care they received at CHCCI pursuant to Moore's contracts. *Id.* at 12. As a result, John Deere's Knoxville Quality Improvement Committee ("QI Committee") undertook a review of

all complaints regarding Moore's practice for six months. *Id.* at 14. John Deere communicated its decision to Moore by letter on April 30, 2003, *Id.* Attach. 3, and provided Moore with a copy of each patient's complaint. *Id.* at 15. In response, Moore insisted that he was not responsible for concerns raised by patients treated at his clinics whom he did not personally treat during the time period at issue during the complaints. *Id.*

On September 29, 2003, John Deere sent a letter to Moore stating that its QI Committee would review Moore's case at its October 14, 2003 meeting. *Id.* at 17, Attach. 4. At the October 14 meeting, the QI Committee recommended that Moore's contracts with John Deere be terminated because of the member complaints it had received. *Id.* at 18. John Deere accepted the QI Committee's recommendation and informed Moore of its decision to terminate Moore's contracts by letter on October 31, 2003. *Id.* at 19, Attach. 5. In addition, John Deere gave Moore notice that he could appeal the decision within 30 days. *Id.*

Moore timely requested an appeal of John Deere's decision, and John Deere scheduled a December 11, 2003 telephonic hearing before a three-physician appeal panel. *Id.* at 20, Attach. 6. Prior to the hearing, Moore supplemented the record with additional documentation. *Id.* at 22. Moore also attended the appeal hearing. *Id.* Throughout, Moore asserted that he should not be held responsible for complaints relating to services at his clinics that he did not personally provide. *Id.*

John Deere's appeal panel upheld its decision to terminate Moore's contracts. *Id.* at 23, Attach. 7. John Deere informed Moore of its decision by letter dated December 23, 2003. *Id.* The letter also provided that Moore's contracts with John Deere would terminate as of January 29, 2004. *Id.*

On February 11, 2004, as required by federal law, John Deere submitted an Adverse Action Report to the Healthcare Integrity and Protection Data Bank ("HIPDB"). *Id.* at 24; *see also* 42 U.S.C. § 11133. The report documented the fact that John Deere terminated Moore's contracts due to complaints from its members. *Id.* Moore challenged the report and requested a review by the Secretary of the Department of Health and Human Services ("Secretary"). *Id.* at 25. The Secretary reviewed John Deere's report and ordered the report remain in the HIPDB. *Id.*, Attach. 8. Moore was allowed to add a comment to the final report indicating his dispute with the report. *Id.*

Relevant Procedural Background

On December 28, 2007, Moore sued John Deere for: (1) defamation; (2) tortious intentional interference with current business relationships; (3) breach of contract; and (4) injunctive relief. R. 1, Compl. In response, John Deere filed a Motion for Summary Judgment asserting immunity under both the HCQIA, 42 U.S.C. § 11101, *et. seq*, and the TPRL, Tenn. Code Ann. § 63-6-219. *See* R. 39, Def.'s Mot. for Summ. J.; R. 40, Defs.' Br. in Support of Mot. for Summ. J.; R. 44, Def.'s Reply Br. in Support of Mot. For Summ. J. In the alternative, John Deere also argued that even if it was not immune under the HCQIA and the TPRL, there was no genuine issue of material fact with regard to any of Moore's claims, and that John Deere was therefore entitled to judgment as a matter of law on all claims. *Id.*

Moore responded by arguing that Defendants did not prove they met the procedural conditions of immunity pursuant to HCQIA and the TPRL. R. 43, Pl.'s Resp. to Mot. for Summ. J. Moore also contended that there were genuine issues of material fact with respect to each substantive claims. *Id.*

The district court granted John Deere summary judgment on all of Moore's claims in a lengthy Memorandum Opinion and Order. R. 70, Mem. Op.; R. 71, Order. The district court first held that John Deere was immune from monetary damages under the HCQIA and, in the alternative, under the TPRL. *Id.* In addition, the district court addressed the substance of each of Moore's underlying claims and held that there was no genuine issue of material fact. *Id.* As such, the district court granted John Deere's Motion for Summary Judgment. *Id.*

Moore filed a *pro se* Motion to Vacate Judgment on April 8, 2010, R. 72, Mot. to Vac. J., and John Deere filed a Response in Opposition. R. 77, Resp. in Opp. to Mot. to Vac. J. The district court denied Moore's motion. R. 78, Order. Meanwhile, Moore's counsel filed a Motion to Withdraw as Attorney, which the district court granted. R. 73, Mot. to Withdraw; R. 76, Order. Moore filed a Notice of Appeal after retaining new counsel, R. 79, Not. Of Appeal, which this Court subsequently dismissed for failure to prosecute. R. 80, Order of the USCA. Moore reinstated the appeal pursuant to this Court's Order. R. 81, Order of the USCA.

Standard of Review

This Court reviews a district court's grant of summary judgment de novo. *Hollway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (en banc). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). The evidence must be considered in the light most favorable to the non-moving party, but there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986). That is, there must be more than a "mere existence of a scintilla of evidence"

to satisfy the Plaintiffs' burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The HCQIA

"The HCQIA was passed in 1986 to provide for effective peer review and interstate

monitoring of incompetent physicians, and to grant qualified immunity from damages for those who

participate in peer review activities." *Meyers v. Columbia/HCA Healthcare Corp.*, 341 F.3d 461,

467 (6th Cir. 2003) (quoting *Austin v. McNamara*, 979 F.2d 728, 733 (9th Cir.1992)); 42 U.S.C. §

11101. Under the HCQIA, if a "professional review action" satisfies reasonableness requirements,

then the people participating in the review "shall not be liable in damages under any law of the

United States or of any State . . . . with respect to the action." 42 U.S.C. § 11111(a)(1). The HCQIA

defines "professional review action" as:

> an action or recommendation of a professional review body which is taken or made
> in the conduct of professional review activity, which is based on the competence or
> professional conduct of an individual physician (which conduct affects or could
> affect adversely the health or welfare of a patient or patients), and which affects (or
> may affect) adversely the clinical privileges, or membership in a professional society,
> of the physician.

42 U.S.C. § 11151(9). The HCQIA defines "professional review activity" as "an activity of a health

care entity with respect to an individual physician" –

> (A)   to determine whether the physician may have clinical privileges with respect
>        to, or membership in, the entity;
> (B)   to determine the scope or conditions of such privileges or membership; or
> (C)   to change or modify such privileges or membership.

*Id.* at § 11151(10). Individuals participating in a professional review action are entitled to immunity

if the professional review action was pursued:

     (1)     in the reasonable belief that the action was in furtherance of quality health care;

     (2)     after a reasonable effort to obtain the facts of the matter;

     (3)     after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances; and

     (4)     in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. § 11112(a). Once these standards have been satisfied, the HCQIA offers immunity to:

     (A)     the professional review body,

     (B)     any person acting as a member or staff to the body,

     (C)     any person under a contract or other formal agreement with the body, and

     (D)     any person who participates with or assists the body with respect to the action.

42 U.S.C. § 11111(a)(1).

As this Circuit has noted, "[t]he HCQIA creates a rebuttable presumption of immunity, forcing the plaintiff to prove that the defendant's actions did not comply with the relevant standards." *HCA Healthcare Corp.*, 341 F.3d at 467-68 (quoting *Id*. § 11112(a)). The HCQIA's rebuttable presumption of immunity results in "an unusual summary judgment" standard: "Might a reasonable jury, viewing the facts in the best light for the plaintiff, conclude that he has shown, by a preponderance of the evidence, that the defendants' actions are outside the scope of § 11112(a)?" *Id.*

Similarly, the TPRL establishes a rebuttable presumption that covered peer review participants are entitled to immunity with respect to their covered actions. Tenn. Code Ann. § 63-6-219(d)(3) (2010) (repealed eff. Apr. 12, 2011); *Peyton v. Johnson City Med. Ctr.*, 101 S.W.3d 76, 78 (Tenn. Ct. App. 2002). Although the TPRL differs from the HCQIA insofar as it utilizes a

straightforward bad faith/malice test, Tenn. Code Ann. § 63-6-219(d)(3) (2010), the district court correctly noted that "[t]here is no doubt that the purposes of the HCQIA and the TPRL are the same. The language by which each of these statutes accomplishes these purposes, however, is not." R. 70, Mem. Op. at 29, fn. 9 (citing Tenn. Code Ann. §63-6-219(b)(1) (2010) (stating that the policies of the TPRL are in conjunction with the applicable policies of the HCQIA). Under both the HCQIA and the TPRL, then, the plaintiff has the burden of overcoming the presumption of immunity by showing that the review process was not reasonable.

A. JOHN DEERE IS ENTITLED TO HCQIA IMMUNITY

       1.      John Deere's Termination of Moore's Contracts Constituted a "Professional Review Action."

Moore complains that "[d]efendant's review was not based upon the individual competence or professional conduct of Dr. Moore, but on the quality of service and quality of care issues of 'Dr. Moore's clinic' . . . ." Appellant Br. at 11. As such, Moore argues that John Deere "may [have had] grounds for termination of a contract," but that its actions fall outside the scope of a "professional review action" and therefore are not protected by the HCQIA. *Id.* at 11-12. In support of this contention, Moore cites to 42 U.S.C. § 11151(9)(D), which details actions outside the protective scope of the HCQIA's "professional review action" immunity protection. Most relevantly, an action is not "considered to be based on the competence or professional conduct of a physician" and is therefore not entitled to immunity if it is "primarily based on . . . a physician's association with, supervision of, delegation of authority to, support for, training of, or participation in a private group

practice with, a member or members of a particular class of health care practitioner or professional

. . . ." 42 U.S.C. § 11151(9)(D).

In response, John Deere correctly argues that this issue is raised for the first time on appeal. Appellee Br. at 20. As such, this Court need not entertain the merits of this argument. *See In re Morris*, 260 F.3d 654, 663 (2001) (noting that, as a general rule, plaintiffs forfeit their opportunity to raise substantive issues for the first time on appeal absent extraordinary circumstances). Even so, we find that the substance of Moore's new claim is unavailing.

First, Moore's argument lacks merit under a plain reading of § 11151(9)(D). Moore failed to establish that John Deere's actions were "primarily based on" Moore's association with CHCCI. Even if Moore is correct that John Deere viewed Moore as responsible for the quality of care provided by other CHCCI providers, this line of analysis does not prove that John Deere's actions were "primarily based on" Moore's association with CHCCI. Indeed, Moore admits that he directly treated a complaining patient, Appellant Br. at 18, and this fact alone is enough to implicate Moore's professional competence and thereby provide grounds for John Deere's HCQIA immunity.

Second, Moore's argument fails because a broad reading of § 11151(9)(D) most appropriately captures the intended scope of the HCQIA. Although this Court has yet to consider § 11151(9)(D), numerous lower court decisions support this approach. For example, in *Fox v. Good Samaritan*, a pediatrician argued that the hospital's decision to suspend his privileges based on his failure to comply with a rule requiring that a physician designate "back-up" physicians holding an identical set of hospital privileges was not a professional review action. 801 F.Supp.2d 883, 888 (N.D. Cal. 2010). Like Moore, the physician in *Fox* argued that the HCQIA is "inapplicable by virtue of section

11151(9)(D)" of the Act. *Id.* at 889. The district court found that the hospital's actions were protected by the HCQIA because "while Fox's own medical competence may not have been in question per se, the issue *did* involve the quality of care he was able to provide to his patients through his designees." *Id.* at 888. "Second, even assuming the matter could not be characterized as implicating Fox's *competence* in any sense, the decision to suspend Fox's privileges for his refusal to comply with the identical privileges rule plainly was a matter involving Fox's own professional conduct. The statutory definition is disjunctive—it applies to decision [sic] relating to competence or professional conduct." *Id.* Finally, the *Fox* court determined that while § 115151(9)(D) "is certainly directed at excluding from statutory protection any privileging decision based on a physician's professional associations, it cannot be stretched to encompass the application of [the hospital's privileges rule], which by its terms did not mandate the designation or exclusion of any particular doctor or group." *Id.* at 889.

Similarly, in *Bhatt v. Brownsville Gen. Hosp.*, a physician sued a hospital after it revoked his privileges. The physician argued that the hospital was not entitled to HCQIA immunity "because various physicians provided care to the patients whose charts were reviewed, yet Dr. Bhatt was the only one held responsible." *Bhatt*, No. 2:03-CV-1578, 2006 WL 167955 at *21 (W.D. Pa. Jan. 20, 2006). The district court found no bar to HCQIA immunity, determining that such an argument is logically flawed because "nothing in the statute, legislative history, or case law suggests the competency of other doctors is relevant in evaluating whether the hospital conducted a reasonable investigation into a doctor's conduct." *Id.* at *22 (citations and alterations omitted). Further, "common sense dictates that regardless of how many arguably incompetent doctors may have

privileges at a given hospital, the removal of any one of them advances the cause of quality health care." *Id.*

Much like in *Fox*, this case involves many patient complaints regarding treatment at CHCCI by practitioners other than Moore, and we agree with the *Fox* court's reasoning in construing this situation. Even though Moore was not the treating physician in all the complaints, his decision to staff his clinics with other practitioners and then inadequately supervise them bears upon his professional conduct. As such, John Deere's termination of Moore's contracts can be reasonably understood as a "professional review action" rather than an action primarily based on Moore's association with CHCCI. In addition, like in *Bhatt*, Moore was the only practitioner directly affected by John Deere's termination of Moore's contracts, even though multiple health care providers were at issue. Much like the *Bhatt* court determined, the bottom line is that there were numerous complaints about the quality of patient care at CHCCI, including the treatment that Moore himself provided. Given the large number of complaints John Deere received about CHCCI, John Deere's decision to terminate Moore's contracts arguably improved patient care for John Deere's clients by eliminating a significant source of patient dissatisfaction. Accordingly, we find that John Deere's termination of Moore's contracts constituted a "professional review action" within the meaning of the HCQIA.

2.    <u>Moore Failed to Rebut HCQIA's Statutory Presumption that John Deere Is Entitled to Immunity.</u>

A professional review action is presumed to satisfy HCQIA's four-factor reasonableness test for immunity unless rebutted by a preponderance of the evidence. 42 U.S.C. § 11112(a). A

professional review action is entitled to immunity if taken: (1) in the reasonable belief that the action was in furtherance of quality health care; (2) after a reasonable effort to obtain the facts of the matter; (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances; and (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3). 42 U.S.C. § 11112(a). We review each of the four prongs in turn and conclude that Moore failed to satisfy his burden of rebutting HCQIA immunity.

a. *Prong One*

First, Moore failed to establish that John Deere's termination of the contracts was not reasonably intended to improve the quality of health care for John Deere's patients. Rather, the record establishes that John Deere's QI committee "with the information available to them at the time of the professional review action, [] reasonably [] concluded that their actions would restrict incompetent behavior . . . ." *Peyton*, 101 S.W.3d at 84 (quoting *Brader v. Alleghany Gen. Hosp.*, 167 F.3d 832, 840 (3rd Cir. 1999)). The record establishes that John Deere received numerous complaints regarding the quality of care at CHCCI. Moore did not offer any proof that John Deere unreasonably determined that terminating Moore's contracts would improve the quality of health care for John Deere's members. Instead, as the district court noted, "[b]y simply pointing to alleged deficiencies in defendants' proof as to the reasonableness of this belief, Dr. Moore is attempting to reverse the burden of proof on this issue." R. 70, Mem. Op. at 17. Consequently, we find that Moore has failed to rebut the presumption that John Deere is entitled to HCQIA immunity under the first prong.

- 12 -

b.  Prong Two

Second, Moore failed to establish by a preponderance of the evidence that John Deere's peer review action was taken in the absence of a reasonable effort to obtain the relevant facts. 42 U.S.C. § 11112(a)(2). Under this prong, the relevant inquiry is whether "the totality of the process leading up to the . . . 'professional review action' evidenced a reasonable effort to obtain the facts of the matter." *Peyton*, 101 S.W.3d at 85 (alterations omitted) (quoting *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 637 (3d. Cir. 1996)). Moore argues that John Deere "exerted some effort to marshal facts, but they were not facts that were relevant . . . . Evidently satisfied that they had sufficient facts, [John Deere] did not bother to put out any further effort to gather relevant facts, i.e., facts about Dr. Moore's care of his patients." Appellant's Br. at 24. In response, John Deere explains that it "provided Moore with a copy of the complaints it received and gave Moore a full opportunity to comment upon and offer proof related to those complaints." Appellee Br. at 51. Additionally, John Deere notes that "Moore has never argued . . . that the information or 'facts' he offered [were] not considered . . . . This information was, in fact, considered. It simply did not persuade John Deere to excuse the complaints." *Id.* at 51-52.

The district court succinctly winnowed through the evidence and concluded that "Dr. Moore's argument is not that the review board failed to consider the[] facts, but that the review board did not reach a decision favorable to him after considering them." R. 70, Mem. Op. at 19. We agree. The district court correctly determined that "Dr. Moore thus has not shown by a preponderance of the evidence that the review committee failed to undertake a reasonable effort to obtain the facts of

this matter." *Id.* at 20. As a result, Moore has not met his burden under the second prong of §

11112(a).

### c. *Prong Three*

Third, Moore failed to demonstrate by a preponderance of the evidence that the peer review

action in this case was taken in the absence of adequate notice and hearing procedures. Under 42

U.S.C. § 11112(b), a health care entity provides adequate notice and hearing where the following

conditions are met:

(1)  Notice of proposed action
      The physician has been given notice stating—
  (A)   (i) that a professional review action has been proposed to be taken against the physician,
      (ii) reasons for the proposed action,
  (B)   (i) that the physician has the right to request a hearing on the proposed action,
      (ii) any time limit (of not less than 30 days) within which to request such a hearing, and
  (C)   a summary of the rights in the hearing under paragraph (3).
(2)  Notice of hearing
      If a hearing is requested on a timely basis under paragraph (1)(B), the physician involved must be given notice stating—
  (A)   the place, time, and date, of the hearing, which date shall not be less than 30 days after the date of the notice, and
  (B)   a list of the witnesses (if any) expected to testify at the hearing on behalf of the professional review body.
(3)  Conduct of hearing and notice
      If a hearing is requested on a timely basis under paragraph (1)(B)—
  (A)   subject to subparagraph (B), the hearing shall be held (as determined by the health care entity)—
      (i) before an arbitrator mutually acceptable to the physician and the health care entity,
      (ii) before a hearing officer who is appointed by the entity and who is not in direct economic competition with the physician involved, or

> (iii) before a panel of individuals who are appointed by the entity and are not in direct economic competition with the physician involved;
>
> (B) the right to the hearing may be forfeited if the physician fails, without good cause, to appear;
>
> (C) in the hearing the physician involved has the right—
> (i) to representation by an attorney or other person of the physician's choice,
> (ii) to have a record made of the proceedings, copies of which may be obtained by the physician upon payment of any reasonable charges associated with the preparation thereof,
> (iii) to call, examine, and cross-examine witnesses,
> (iv) to present evidence determined to be relevant by the hearing officer, regardless of its admissibility in a court of law, and
> (v) to submit a written statement at the close of the hearing; and
>
> (D) upon completion of the hearing, the physician involved has the right—
> (i) to receive the written recommendation of the arbitrator, officer, or panel, including a statement of the basis for the recommendations, and
> (ii) to receive a written decision of the health care entity, including a statement of the basis for the decision.

42 U.S.C. § 11112(b). Significantly, however, "[a] professional review body's failure to meet the conditions described in this subsection shall not, in itself, constitute failure to meet the standards of subsection (a)(3) of this section." *Id.*

Moore contends that John Deere failed to satisfy the requirements of § 11112(b) because, although John Deere provided him with a letter informing him that John Deere intended "to review Dr. Moore's cases and alleged complaints," John Deere was "required to provide . . . notice in writing that a professional review action was proposed to be taken against him." Appellant Br. at 27. In addition, Moore argues that John Deere's letter did not satisfy the HCQIA because the letter

advised him of a meeting that was to take place fewer than thirty days from the date of the letter, failed to inform him of the location of the meeting or the identities of the witnesses expected to testify, and also failed to inform him of his rights. *Id.* at 27-28. Moore further argues that the appeal procedures John Deere instituted violated the notice requirements of HCQIA because "the appeals hearing was set for less than 30 days after the date of the notice." *Id.* at 29.

John Deere does not dispute Moore's version of the underlying facts, but instead argues that the letters and hearings Moore referenced constitute adequate notice and hearing procedures under § 11112(a)(3). The district court found that a reasonable jury could not find by a preponderance of evidence that the peer review action in this case was taken in the absence of adequate notice and hearing procedures "given these letters and hearings." R. 70, p. 25. In addition, the district court found that the procedures afforded to Moore were "fair to [him] under the circumstances." *Id.* at 26. As the district court correctly noted, whether the hearing could have been conducted in a better way is irrelevant because the procedures comprising the peer review action in this case were adequate under the circumstances. *Id.* at 26-27. Consequently, the district court correctly found that Moore failed to meet his burden under the third prong of § 11112(a).

### d. Prong Four

Under the fourth prong, Moore must demonstrate by a preponderance of the evidence that John Deere's peer review action was taken without a reasonable belief that it was warranted after a reasonable effort to obtain facts and after meeting the requirement of 42 U.S.C. § 11112(a)(3). 42 U.S.C. § 11112(a)(4). The "analysis under § 11112(a)(4) closely tracks [the] analysis under § 11112(a)(1)." *Meyers*, 341 F.3d at 471. Put simply, Moore must show that the "facts were so

obviously mistaken or inadequate as to make reliance on them unreasonable." *Id.* (internal quotation marks omitted). As the preceding analysis demonstrates, John Deere thoroughly reviewed Moore's case before issuing a final ruling. Moore failed to demonstrate the unreasonableness of this belief. As such, Moore failed to satisfy the final prong of § 11112(a).

## B. MOORE'S CLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF ARE UNAVAILING

Moore raises four claims against John Deere: (1) defamation, (2) tortious interference with business relationships, (3) breach of contract, and (4) injunctive relief. Because the HCQIA renders John Deere immune from money damages in this case, all of Moore's claims for damages fail. *See* 42 U.S.C. § 11112(a) (providing that persons entitled to HCQIA protection "shall not be liable in damages . . . "). Given that Moore styles his breach of contract claim as a request for damages rather than a request for specific performance, Appellant Br. at 47-50, Moore's breach of contract claim is fully foreclosed by the HCQIA. Moore's claims for defamation and tortious interference with business relationships also fail insofar as he seeks damages, but we consider them to the extent that they can be construed as a request for injunctive relief. Finally, because the HCQIA does not implicate Moore's request for injunctive relief, we examine that claim in its entirety.

### 1. Defamation

To establish a cause of action for defamation in Tennessee, Moore must establish that: (1) John Deere published a statement; (2) with knowledge that the statement is false and defaming; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W. 2d 569, 571 (Tenn. 1999). Truth

is an absolute defense to defamation. *Memphis Publishing Co. v. Nichols*, 569 S.W.2d 412, 420 (Tenn. 1978).

Moore complains of defamation on the grounds that John Deere issued an "erroneous notice" to the HIPDB indicating that "Dr. Moore's contracts were terminated for a lack of personal quality of care of his patients . . . ." and that the "basis of this action was 'failure to meet or comply with contractual obligations or participation requirements'" in Moore's contracts. Appellant Br. at 41 (quoting R. 39-10, HIPDB Report, p. 4.) In response, John Deere explains that:

> based on the undisputed evidence in this case, any such communication is completely true. As reported to the HIPDB, John Deere did, in fact, cancel Dr. Moore's contracts due to the number and the nature of complaints it received from its members. Since truth is an absolute defense to a claim of defamation, this fact alone entitles Defendants to summary judgment on the Plaintiffs' claims for defamation. Moreover, Moore admitted away any potential claim for defamation when he testified in his deposition that he had no proof that any statement was ever made with any knowledge that it was false or any reckless disregard for the truth of the statement.

Appellee Br. at 57-58 (internal citations omitted).

As the district court noted, Moore "failed to offer proof that these statements were made with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statements." R. 70, at 35. Accordingly, we find that the district court appropriately granted summary judgment with regard to Moore's defamation claim.

2.     Tortious Interference

Although Moore labels his claim as one for "tortious interference with business relationships," both parties cited cases involving the closely-related tort of procurement of a breach of contract to the district court. *See* Pl. Opp. To Mot. for Summ. J., R. 43 at 16; Def. Mot for Summ.

J., R. 40 at 21. The elements of a cause of action for procurement of a breach of contract in Tennessee are: (1) there is a legal contract; (2) the wrongdoer has knowledge of the existence of the contract; (3) the wrongdoer intends to induce its breach; (4) the wrongdoer acted maliciously; (5) the contract was, in fact, breached; (6) the act complained of is the proximate cause for breach of the contract; and (7) there must have been damages resulting from the breach of the contract. *Id.*

Moore alleges that "[a] reasonable trier of fact could find that [John Deere] interfered with CHCCI's business relationship with its patients." Appellant Br. at 46. In response, John Deere offers Moore's own testimony:

> Q: Were any of these relationships that you pointed to here, were any of those actually terminated because - -
> [Moore]: Related to the John Deere?
> Q: Yes.
> [Moore]: Terminate, yeah- - no. No, they weren't. But that's - - that's just extreme damage . . .
> . . .
> Q: As you sit here today, you can't tell me any that actually ended because of John Deere's actions?
> [Moore]: Right.

Appellee Br. at 59 (citing R. 39-1, Pl. Dep. at 233-35). Given Moore's own testimony, we echo the district court's reasoning: "Were plaintiffs to point to some evidence in the record indicating that defendants induced a breach of plaintiffs' contracts with third parties, and that a breach actually occurred, summary judgment would be inappropriate on this claim. But plaintiffs have not done this." R. 70, p. 40 (internal citations omitted). Rather, Moore offered only vague allegations against John Deere, and he failed to marshal any meaningful evidence in support of his claim. *See*

Appellant Br. at 46. Accordingly, the district court appropriately granted summary judgment on this claim.

### 3. Injunctive Relief

Moore also seeks injunctive relief on the grounds that the statements in the adverse action report filed with the HIPDB caused "irreparable harm, as his ability to earn a living has been impeded." Appellant Br. at 50. In response, John Deere correctly notes that "[n]owhere in the regulations implementing the HIPDB is an individual afforded the right to sue a reporting entity for an inaccurate HIPDB report." Appellee Br. at 64; 45 C.F.R. § 61.1 *et seq.* (1999). Indeed, the regulations provide that Moore's exclusive remedy for an adverse action report is to dispute the accuracy of the report and request a review by the Secretary. 45 C.F.R. § 61.15(b)-(c). As such, Moore fails to assert a cognizable claim for injunctive relief and the district court's grant of summary judgment was proper.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court.