NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0100n.06

No. 13-2366

**FILED**
Feb 02, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANDREW L. SHIRVELL | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DEBORAH L. GORDON | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:     NORRIS, MOORE, and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge.  Andrew Shirvell brought suit against Deborah Gordon, a lawyer who had represented a client in a recent action against Shirvell.  The district court dismissed the action and imposed non-monetary sanctions against Shirvell under Rule 11 of the Federal Rules of Civil Procedure.  Shirvell does not appeal the dismissal of his claims.  He only challenges the sanctions award.  After Shirvell filed this appeal, Gordon moved for further sanctions under Rule 38 of the Federal Rules of Appellate Procedure, arguing that the appeal is frivolous.  We affirm the imposition of Rule 11 sanctions.  We also find that this appeal is frivolous, but in the exercise of our discretion, we decline the opportunity to impose further sanctions under Rule 38.

I.

In 2010, Andrew Shirvell became upset that the students at the University of Michigan—his alma mater—had elected Christopher Armstrong, an openly gay college junior, as student council president. Shirvell, then working as an Assistant Attorney General for the State of Michigan, began posting negative commentary about Armstrong on a Facebook "fan page." After Facebook removed that page, Shirvell created the "Chris Armstrong Watch" blog. Though presented as a "watch" site containing legitimate political discourse, the blog contained many extreme claims about Armstrong, his private life, and his alleged involvement in various criminal activities. Shirvell soon started appearing at the University campus, "protesting" outside Armstrong's house, following Armstrong around campus, approaching his friends, and calling his employer. In addition to his ongoing blog posts, Shirvell appeared on several local and national television shows—including conducting an interview with CNN's Anderson Cooper, to discuss his campaign against Armstrong.

After unsuccessful attempts by Armstrong and the University to halt Shirvell's course of conduct, Armstrong sued Shirvell. Deborah Gordon represented Armstrong in that action. In August 2012, a federal jury found in Armstrong's favor on claims of defamation, false light invasion of privacy, intentional infliction of emotional distress, and stalking. The jury awarded Armstrong a total of $4.5 million in actual and exemplary damages. In a separate opinion, *Armstrong v. Shirvell* (No. 13-2368), we affirmed the district court in part but reversed a portion of the damages award.

During the course of Shirvell's campaign against Armstrong, Shirvell's employer—the Michigan Attorney General's office—gradually became aware of his behavior and conducted an internal investigation. Following a disciplinary hearing in November 2010, the office concluded

that Shirvell had engaged in "conduct unbecoming a state employee" and terminated Shirvell's employment. In reaching this decision, the office considered Shirvell's disciplinary history during his four years of employment, including his suspension and written reprimand in August 2010 for an outburst against a co-worker, and his 2009 conviction for driving under the influence of alcohol. However, the termination decision was mostly predicated on Shirvell's blog and his other behavior toward Armstrong. Shirvell's supervisors had tried unsuccessfully on several occasions to convince him to stop his attacks on Armstrong. The termination letter stated that Shirvell's conduct "could reasonably be construed to be an invasion of privacy, slanderous, libelous, and tantamount to stalking behavior." The letter claimed that Shirvell's behavior compromised his ability to perform his duties and had the potential to damage the office's public perception and its ability to recruit candidates for employment. Overall, the office believed that there was "an overwhelming case to terminate Mr. Shirvell."

Shirvell filed a grievance with the Michigan Civil Service Commission to challenge his dismissal. The Commission denied the grievance, finding that Shirvell was discharged for just cause. The Commission identified some small problems with the dismissal process. For example, it concluded that the Attorney General should not have used the 2009 DUI against Shirvell because the office had not disciplined Shirvell for the incident at the time. Nonetheless, the report found that significant evidence justified the dismissal. In particular, the report emphasized that Shirvell's conduct, which constituted "harassing conduct of the basest sort," was unbecoming of his position.

In October 2011, while Armstrong's case against Shirvell (No. 13-2368) was still pending in the Eastern District of Michigan, Shirvell filed this separate suit in the same court. Gordon is—and always has been—the only defendant in the present case. The complaint alleged

tortious interference with a business relationship; defamation; and false light invasion of privacy.[1]

Shirvell alleged, as the basis for his tortious interference claim, that Gordon interfered with the internal investigation that the Attorney General's office conducted into Shirvell's actions, and that Shirvell was fired as a result of Gordon's interference. In support, Shirvell alleged, *inter alia*, that Gordon had engaged in specific conversations with Michael Ondejko, a special agent in the Attorney General's office who was assigned to investigate Shirvell's conduct. Shirvell claimed that Gordon gave Ondejko "substantial additional information" for his investigation into Shirvell's conduct, and had sought to "improperly influence" Ondejko. Under the defamation and false light claims, Shirvell alleged that Gordon had "falsely and maliciously" made a number of statements about Shirvell that were either defamatory or portrayed a false impression. Gordon moved to dismiss the tortious interference count for failure to state a claim. The district court later granted that motion.

Before the district court ruled on the motion to dismiss, Gordon served on Shirvell a motion for Rule 11 sanctions. In January 2012, after Shirvell failed to retract his pleadings or to materially amend them, Gordon filed the motion. The motion claimed that Shirvell's complaint was "infused with outright, knowing falsehoods." Gordon sought an award of fees and costs incurred in defending Count I of the complaint, as well as those incurred in conducting discovery on various factual issues alleged in the complaint. In July 2012, after a hearing, the court granted Gordon's motion for sanctions. The sanctions ultimately awarded were purely non-monetary.[2]

---

[1] The court denied Shirvell's motion to consolidate this case with Armstrong's case against Shirvell.

[2] Gordon's motion for sanctions originally requested that the district court order Shirvell to pay Gordon's fees and costs. Rule 11(c)(4) of the Federal Rules of Civil Procedure gives district courts the authority to enter such an order. Both the order granting sanctions and the transcript of the motion hearing suggest that the district court

In November 2012, Gordon moved for summary judgment on the defamation and false light claims. The district court granted summary judgment in her favor on both claims.

Shirvell appealed, but his briefs focus on just one issue: the propriety of the district court's imposition of Rule 11 sanctions against him.[3] Moreover, while this appeal was pending, Gordon moved for sanctions against Shirvell under Rule 38 of the Federal Rules of Appellate Procedure. She alleged that this appeal is "wholly without merit."

II.

We review a district court's decision to impose sanctions for abuse of discretion. *DiPonio Constr. Co. v. Int'l Union of Bricklayers and Allied Craftworkers, Local 9*, 687 F.3d 744, 752 (6th Cir. 2012). "'A district court abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence.'" *Merritt v. Int'l Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010) (quoting *Brown v. Raymond Corp.*, 432 F.3d 640, 647 (6th Cir. 2005)).

A.

Federal Rule of Civil Procedure 11(b) provides that an attorney or unrepresented party makes certain representations to the court every time he presents a pleading to the court, "whether by signing, filing, submitting, or later advocating it." Included among these are representations that the pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have

---

granted Gordon's request to order fees and costs. However, the district court never ordered Shirvell to pay money, and both parties agree on appeal that the sanctions imposed were non-monetary.

[3] Shirvell's notice of appeal signaled his intent to challenge, *inter alia*, all of the district court's dispositive rulings. Later, however, he decided to abandon most of these grounds of appeal. He does not challenge the dismissal of his tortious interference claim or the adverse decision on summary judgment on the other two claims.

evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b).

The rule "'stresses the need for some pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed.'" *Merritt*, 613 F.3d at 626 (quoting *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988)). This duty does not end when the pleadings are filed. Rather, the plaintiff "'is impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11.'" *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 374 (6th Cir. 1996) (quoting *Herron*, 858 F.2d at 335). In other words, the Rule "imposes on litigants 'a continuing duty of candor,' and a litigant may be sanctioned 'for continuing to insist upon a position that is no longer tenable.'" *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 395 (6th Cir. 2009) (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997)).

A district court may sanction an attorney or unrepresented party for a violation of Rule 11. Fed. R. Civ. P. 11(c). A party may move for sanctions against the opposing attorney or unrepresented party by serving—but not filing—a motion containing specific details of the conduct alleged to have violated Rule 11. *Id.* 11(c)(2). The motion may then be filed after twenty-one days, unless "the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* The district court may then award sanctions after giving the attorney or unrepresented party notice and the opportunity to be heard. *See Youn v. Track, Inc.*, 324 F.3d 409, 422 (6th Cir. 2003).

B.

In arguing that the district court abused its discretion, Shirvell essentially makes two arguments. First, he contends that he acted reasonably in filing the tortious interference claim because his pre-filing inquiry revealed sufficient information to bring the claim. Second, he insists that—based on the information he had at the time and the lack of discovery—he acted reasonably in continuing to advocate the tortious interference claim, even after Gordon served him with the motion for sanctions. Neither argument has merit.

Shirvell supported the tortious interference claim by referring in the complaint to specific details of contacts between Gordon and Ondejko. Shirvell had no reasonable basis to believe that these conversations ever took place. In fact, he was aware of significant evidence that Gordon and Ondejko had never communicated about Ondejko's investigation. At Shirvell's hearing before the Civil Service Commission, Ondejko testified under oath that he had not spoken to Gordon before completing his investigation. Shirvell heard this testimony before even filing his claim against Gordon. He clearly lacked evidentiary support for his claims about Gordon.

Even if the panel were to accept Shirvell's claim that he expected to uncover further details about Gordon's contacts with Ondejko after further investigation, Shirvell violated his ongoing Rule 11 duty. He failed to materially amend his complaint and continued to advocate his position, even as further evidence indicated that his claims about Gordon were baseless. Shirvell was present when Ondejko testified in his deposition in November 2011 for Armstrong's case against Shirvell. There, Ondejko testified that he had never spoken to Gordon, other than when Gordon had let him know he might become a witness. In an affidavit, Gordon

firmly stated that she did not have the alleged contact with Ondejko and that she did not provide information about Shirvell to anyone in the Attorney General's office.

Shirvell claims that he was not bound to accept Ondejko and Gordon's denials as true and that he had a reasoned basis for standing by his allegations. But—even in the face of significant evidence that his allegations were untrue—Shirvell has not pointed to any basis on which he reasonably believed that Gordon passed information to Ondejko or sought to influence the investigation. As time went on, it became increasingly clear that his claims amounted to nothing more than speculation. His failure to withdraw the allegations violated Shirvell's continuing duty of candor. The district court did not abuse its discretion under Rule 11 when it imposed sanctions as a result.

C.

Although Shirvell's arguments on appeal are unavailing, the record reveals one legal error that Shirvell failed to raise on appeal. He has therefore forfeited the issue.

A district court's "order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction." Fed. R. Civ. P. 11(c)(6). The court should provide the requisite explanation in its order. In general,

> [i]t is not sufficient for the district court merely to announce its agreement with the reasons . . . briefed and argued by the party seeking sanctions, and then leave it to this court to comb through the accusing parties' pleadings and briefs filed in the district court and the transcript of . . . oral argument . . . in order to locate for itself facts that might constitute sufficient grounds for the imposition of Rule 11 sanctions.

*Elsman v. Standard Fed. Bank*, 46 F. App'x 792, 801 (6th Cir. 2002) (first alteration in original) (internal quotation marks omitted); *see also Nieves v. City of Cleveland*, 52 F. App'x 635, 637 (6th Cir. 2002) (remanding because the district court "merely announced its agreement with the

reasons briefed and argued by the party seeking sanctions"). This court has required district courts to provide significant detail in their Rule 11 findings. Remand has generally been required when the district court fails to "indicate how any particular pleading, motion, or paper relates to any particular expense or attorney fee." *Bodenhamer Bldg. Corp. v. Architectural Research Corp.*, 873 F.2d 109, 114 (6th Cir. 1989); *see also Bodenhamer Bldg. Corp. v. Architectural Research Corp.*, 989 F.2d 213, 218 (6th Cir. 1993).

Here, the district court's order imposing sanctions did nothing more than signal the court's agreement with Gordon's position: it granted sanctions "[f]or the reasons stated on the record at the hearing and in Defendant's briefs." And although the hearing allowed both parties to be fully heard, the district court did not explain the precise basis for the sanctions. The court simply stated: "Well, at some point, you have an obligation to withdraw the claim. And I'm going to grant sanctions." This fails to meet the standard that Rule 11(c)(6) sets.

Nonetheless, reversal is unnecessary. Shirvell failed to raise this error on appeal, and he has therefore forfeited it. Unless the argument is jurisdictional, *see Maxwell v. Dodd*, 662 F.3d 418, 421 (6th Cir. 2011) (citing *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004)), a party generally forfeits an argument by failing to raise it on appeal. *See S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 564–65 (6th Cir. 2007) (holding that a party forfeits an argument by failing to raise it, or raising it only in a cursory manner, on appeal). Although this court has not addressed the applicability of the forfeiture doctrine to Rule 11 arguments, we hold that this issue is forfeitable because it is not jurisdictional.

In *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385 (4th Cir. 2004) (en banc), the defendants moved for Rule 11 sanctions against the plaintiffs. The defendants failed to comply with Rule 11(c)'s "safe harbor" provision, filing the motion without giving the

plaintiffs twenty-one days to retract or amend its pleading, but the district court granted the requested sanctions. The plaintiffs failed to argue before the district court that Rule 11(c) had been violated. The Fourth Circuit held that the plaintiffs had forfeited the issue. The court reasoned that the issue could be forfeited because it related to a non-jurisdictional, claim-processing rule. *Id.* at 396.

It is even clearer that a district court's failure to offer an adequate description and explanation, as required by Rule 11(c)(6), is not jurisdictional. It does not affect the court's ability to hear the claim, but simply addresses the way in which the district court should adjudicate the issue. It therefore falls squarely within the range of issues that may be forfeited. Shirvell has forfeited the issue by failing to raise it here.

This court has the discretion to correct an error, notwithstanding waiver or forfeiture, if it is necessary to prevent manifest injustice. *See, e.g., Fryman v. Fed. Crop Ins. Corp.*, 936 F.2d 244, 251 (6th Cir. 1991). In the present case, the failure to follow the letter of Rule 11(c)(6) did not lead to injustice. Although the district court should have provided analysis, Gordon's motion for sanctions specifically identifies the conduct warranting sanctions and explains why sanctions are appropriate. Both sides were given the opportunity to present their positions at a hearing and, despite the absence of written analysis, the hearing transcript shows that the district court engaged in a reasoned decision making process, taking the appropriate factors into account. Finally, as discussed, the sanctions that the district court imposed were warranted and went no further than necessary to deter future conduct of this sort. Indeed, no monetary sanctions were imposed, despite Gordon's initial request for costs and fees.

As a result, we need not reverse in order to prevent manifest injustice. Despite the district court's error, we affirm the imposition of Rule 11 sanctions.

III.

We now turn to Gordon's motion to impose sanctions on Shirvell—in the form of attorney's fees—under Rule 38 of the Federal Rules of Appellate Procedure. Although we do not award attorney's fees, we do find that this appeal is frivolous.

Rule 38 states: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." "'Sanctions are appropriate where the appeal was prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy.'" *Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 676 (6th Cir. 1999) (quoting *Allinder v. Inter–City Products Corp. (USA)*, 152 F.3d 544, 552 (6th Cir. 1998)). Moreover, bad faith or intentional misconduct is not necessary to impose Rule 38 sanctions. *See Wilton Corp.*, 188 F.3d at 677 ("We believe that this circuit, on the whole, does not require that an applicant . . . must demonstrate bad faith or intentional misconduct . . . in order to prevail on its motion"). Here, Shirvell lacked any reasonable expectation that his argument would alter the district court's judgment. He has been given a reasonable opportunity to respond by way of a response in opposition to the motion for sanctions, but has failed to point to *any* evidence in the record which undermines the district court's findings of fact. His appeal is frivolous.

But even so, monetary sanctions under Rule 38 are not mandatory. Rather, we retain discretion to determine when they are appropriate. *DiPonio Constr. Co. v. Int'l Union of Bricklayers and Allied Craftworkers, Local 9*, 687 F.3d 744, 753 (6th Cir. 2012). Having carefully considered all of the circumstances of this case, we decline the opportunity to issue monetary sanctions under Rule 38. Gordon's motion is denied. In our view, such sanctions are

unnecessary. This opinion should itself suffice to make clear that the type of litigation conduct in which Shirvell engaged is intolerable, and serve as a deterrent to Shirvell from such conduct in the future.

IV.

For the above reasons, we affirm the imposition of Rule 11 sanctions. We also find that Shirvell's appeal is frivolous, but that Rule 38 sanctions are not necessary. We therefore deny Gordon's motion for Rule 38 sanctions.