<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 18a0633n.06

Case No. 18-1492

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Dec 20, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TIMOTHY JODWAY, et al., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| ORLANS, PC, et al., | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: KEITH, CLAY, and NALBANDIAN, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiffs husband and wife Timothy Jodway ("T. Jodway") and Alaina Zanke-Jodway ("A. Jodway") (together, "Plaintiffs") appeal from the order of the district court dismissing Plaintiffs' claims that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and imposing sanctions against Plaintiffs under Fed. R. Civ. P. 11. For the reasons set forth below, we **AFFIRM** the district court's dismissal of Plaintiffs' claims, and we **REVERSE** and **VACATE** the imposition of sanctions against Plaintiffs.

## BACKGROUND

### Factual and Procedural History

In 2005, Plaintiffs granted Fifth Third Mortgage-MI, LLC a $649,000 mortgage on their second home in Boyne City, MI 49712 ("Boyne City Property"). On January 20, 2011, Fifth Third Mortgage-MI, LLC transferred the mortgage to Fifth Third Mortgage Company ("Fifth Third").

On September 11, 2008, Plaintiffs filed a 37-count complaint in the State of Michigan Charlevoix County Circuit Court against several defendants, including Fifth Third Mortgage-MI, LLC. Plaintiffs alleged, *inter alia*, fraud and negligence, and they challenged the validity of their mortgage. The case was removed to federal court, where it was dismissed for failure to prosecute under Fed. R. Civ. P. 41(b). *See Zanke-Jodway v. Capital Consultants, Inc.*, No. 1:09-cv-930, 2010 WL 776743 (W.D. Mich. Mar. 3, 2010).[1]

In June 2014, Plaintiffs were in default on their mortgage, and Fifth Third, through its counsel at Orlans PC, initiated foreclosure-by-advertisement proceedings. The foreclosure sale was scheduled for June 27, 2014, but one day prior, T. Jodway filed for Chapter 13 bankruptcy, which stayed the foreclosure.

In their complaint, Plaintiffs allege that during the bankruptcy proceedings, Orlans PC and Abood-Carroll filed a Proof of Claim on September 16, 2014, on behalf of their client Fifth Third. Plaintiffs allege that the Proof of Claim was false because it claimed that Fifth Third had a valid mortgage on Plaintiffs' property. The mortgage is not valid, according to Plaintiffs, because A. Jodway's signature was illegally obtained.

Fifth Third, through its attorney Abood-Carroll, moved for relief of the automatic stay in T. Jodway's bankruptcy case on March 3, 2015. Plaintiffs allege that in its motion, Fifth Third again falsely claimed the mortgage was valid. On April 2, 2015, the bankruptcy court granted Fifth Third's motion, allowing it to pursue foreclosure against the Boyne City Property.

---

[1] Since filing their initial suit in 2008, Plaintiffs have repeatedly challenged the validity of the mortgage in state and federal court. Several courts, including this one, have held that the dismissal of the 2008 suit was an adjudication on the merits, barring Plaintiffs from further challenging the mortgage under *res judicata*. *See, e.g. Fifth Third Mortg. Co. v. Jodway*, Case No. 333936, 2017 WL 5473513, at *4–5 (Mich. Ct. of App. Nov. 14, 2017) ("[T]he Jodways are barred from litigating any claims arising from the mortgage formation."); *Jodway v. Fifth Third Bank (In re Jodway)*, 719 F. App'x 502, 506 (6th Cir. 2018) (recognizing that a dismissal for lack of prosecution constitutes a decision on the merits for *res judicata* purposes).

On July 15, 2015, Richter, on behalf of Fifth Third, filed a complaint in the State of Michigan Charlevoix County Circuit Court for judicial foreclosure against the Boyne City property. In their answer to the compliant, Plaintiffs once again challenged the validity of the mortgage. Fifth Third moved for summary judgment, which the state court granted.

## I.      Plaintiffs' Equal Credit Opportunity Act Claims[2]

Throughout the extensive litigation pertaining to the Boyne City Property, Plaintiffs have alleged that the mortgage was invalid because it violates the Equal Credit Opportunity Act ("ECOA").[3] In their complaint, Plaintiffs claim that T. Jodway signed an application for a loan on the subject property on August 3, 2005, stating that he had an annual income of $155,000. During the 2008 litigation, Loan Officer Keith Hopper ("Hopper") allegedly falsely declared that Plaintiffs' mortgage loan was based on a July 2005 joint application in which Plaintiffs listed a joint income of $185,000 annually. However, according to Plaintiffs, the mortgage loan was not approved based on the July 2005 joint application, but on a separate August 2005 application that only T. Jodway signed. Plaintiffs claimed to have come to this realization in 2016, after obtaining through discovery Fifth Third's 2005 Home Mortgage Disclosure Act ("HMDA") data report. The HDMA data report allegedly revealed that the mortgage loan was approved based on T. Jodway's annual income of $150,000. According to Plaintiffs, the only loan application matching the HDMA data report is the August 2005 application which was only signed by T. Jodway. Plaintiffs further

---

[2] Plaintiffs' Equal Credit Opportunity Act claims are not at issue in this appeal.

[3] "Congress enacted the ECOA in 1974 to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." *RL BB Acquisition, LLC v. Bridgemill Commons Dev. Group, LLC*, 754 F.3d 380, 383 (6th Cir. 2014) (internal citations and quotations omitted). The ECOA makes it unlawful for a creditor to discriminate against any applicant, with respect to any credit transaction, on the basis of, *inter alia*, marital status. 15 U.S.C. § 1691(a)(1). Regulations promulgated under the statute state that a creditor shall not require the signature of an applicant's spouse, other than a joint applicant, on any credit instrument if the applicant him or herself qualifies as creditworthy. 12 C.F.R. § 202.7(d).

state that it was only after A. Jodway signed the loan documents that the loan was granted based on T. Jodway's individual application. They thus allege that Hopper violated the ECOA and illegally obtained A. Jodway's signature on the mortgage by claiming that both incomes were required for loan approval.

## II.     Plaintiffs' FDCPA Claims

On April 19, 2017, Plaintiffs sued Defendants in district court, alleging that various actions Defendants took during the prior litigation violated the FDCPA and the Michigan Collection Practices Act. These alleged actions include: 1) filing a Proof of Claim in 2014 that falsely claimed that Fifth Third Mortgage Company held a valid mortgage against the Boyne City Property; 2) filing a motion to lift the stay on foreclosure proceedings in 2015 that also claimed the mortgage was valid; and 3) initiating judicial foreclosure proceedings in 2015, knowing that A. Jodway's signature was illegally obtained.

The district court found that Plaintiffs' FDCPA claims lacked merit because they were barred by the Act's one-year statute of limitations. 15 U.S.C. § 1692k(d). The district court observed that all of the alleged violations occurred more than one year before April 19, 2017, the day Plaintiffs filed their complaint.

Plaintiffs argued that Defendants continuously violated the FDCPA by reaffirming the validity of the mortgage throughout various legal proceedings. The district court rejected this argument, noting that the Sixth Circuit has on numerous occasions rejected the continuing-violation doctrine outside the context of Title VII. The district court found that Plaintiffs alleged discrete violations for which they could only recover by filing their complaint within one year of the violations, and because Plaintiffs failed to do so, their claims were untimely.

Plaintiffs also argued that their claims warrant equitable tolling pursuant to the fraudulent concealment doctrine. According to Plaintiffs, Defendants concealed the existence of the loan application signed only by T. Jodway until four days before the state court foreclosure hearing. Plaintiffs contend that this loan application is material evidence of the mortgage's validity. The district court also rejected this argument, observing that it is unclear whether this Court permits tolling via the fraudulent concealment doctrine for FDCPA claims. The district court also held that Plaintiffs did not adequately allege that Defendants concealed their conduct, thereby preventing Plaintiffs from suing within the limitations period.

### III.     Defendants' Motion for Sanctions

On July 24, 2017, Defendants moved for sanctions pursuant to Fed. R. Civ. P. 11(c)(2) against A. Jodway personally and as counsel for T. Jodway. The district court observed that in the years since Plaintiffs filed their first lawsuit in 2008, numerous courts have rejected their mortgage-related claims. The district court described this suit as an attempt to delay foreclosure of the Boyne City Property by suing opposing counsel. Considering this, the district court found that requiring Plaintiffs to pay $5,000 in attorney's fees and to obtain pre-approval before filing new mortgage-related claims in federal court was necessary in order to deter Plaintiffs from filing additional baseless claims.

## DISCUSSION

### I.     Plaintiffs' FDCPA Claims

### Standard of Review

We review *de novo* the district court's order granting a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014).

**Analysis**

### A. Statute of Limitations

First, Plaintiffs argue that a Rule 12(b)(6) motion based on a statute of limitations argument is generally inappropriate. Additionally, Plaintiffs argue that Defendants did not meet their burden in showing that the violations fell outside the statute of limitations.

"[A] motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. United States Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). "However, dismissal is warranted if the allegations in the complaint affirmatively show that the claim is time-barred." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (internal citations and quotations omitted). "Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run." *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). If the defendant meets this requirement, the plaintiff must then establish an exception to the statute of limitations in order to avoid dismissal. *Id.*

The FDCPA prohibits a debt collector from using false or misleading representation, or unfair practices, in connection with collection of a debt. 15 U.S.C. §§ 1692e, f. FDCPA claims are subject to a one-year statute of limitations. 15 U.S.C. § 1692k(d). All of the alleged violations occurred more than one year prior to Plaintiffs filing their complaint. Defendants filed their Proof of Claim on September 16, 2014; their motion for relief from stay on March 3, 2015; and their judicial foreclosure complaint on July 20, 2015. Defendants produced T. Jodway's loan application days before the April 15, 2016 hearing. Plaintiffs filed their FDCPA complaint on April 19, 2017—more than one year after all of the alleged violations occurred. The allegations in Plaintiffs' complaint affirmatively show that their claims are time-barred. *Lutz*, 717 F.3d at 464.

### B. Continuing-Violation Doctrine

Under the continuing-violation doctrine, violations that occur outside of the statute of limitations period are actionable when a plaintiff alleges not just one incident of unlawful conduct, "but an unlawful practice that continues into the limitations period." *Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982)). Plaintiffs argue that Defendants committed continuous violations of the FDCPA. Specifically, they argue that Defendants unlawfully discriminated against them in the loan application process, in violation of the ECOA, and that the discrimination continued through collections in both the bankruptcy and foreclosure cases. Plaintiffs assert that because Defendants continuously misrepresented the validity of the mortgage, the continuing-violation doctrine applies to their claims.

As the district court observed, this Court has twice rejected similar arguments for application of the continuing-violation doctrine in the FDCPA context. In *Slorp v. Lerner, Sampson & Rothfuss*, the plaintiff accused the defendants of violating the FDCPA by making false statements when filing a foreclosure action. 587 Fed. App'x 249, 252–53 (6th Cir. 2014). The plaintiff acknowledged the one-year statute of limitations for FDCPA claims but asked the district court to apply the continuing-violation doctrine, arguing that the defendants committed a second violation when they later submitted a false affidavit to the district court. *Id*. at 257. This Court observed that the initiation of a debt-collection suit is a discrete act, and an FDCPA claim accrues on that date. *Id.* at 258 ("Although the subsequent prosecution of that suit may exacerbate the damages, the continued accrual of damages does not diminish the fact that the initiation of the suit was a discrete, immediately actionable event."). The plaintiff also argued that the defendants violated the FDCPA when they later opposed the plaintiff's motion for relief from judgment. *Id.*

at 259. This Court held that the plaintiff "was not deceived or abused anew each time the defendants reaffirmed their deceptive statements throughout the litigation." *Id.*

In *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, which involved the same defendant law firm as *Slorp*, the plaintiffs argued that the defendants violated the FDCPA by initiating a foreclosure action on a mortgage in which the defendants' clients did not actually have an interest. 658 F. App'x 268, 273 (6th Cir. 2016). This Court observed that the FDCPA claim accrued when the bank initiated the foreclosure action, which occurred over four years before the plaintiff filed his suit in district court. *Id.* The plaintiff argued that many of the actions constituting his claim, including the bank's subsequent objection at his bankruptcy proceeding, occurred after the filing of the foreclosure case. *Id.* Applying *Slorp*, this Court found that the bank "did not violate the FDCPA anew merely by asserting its interest in the mortgage throughout the state-court action." *Id.* The plaintiff also argued that the violations were continuing because the defendants filed a proof of claim in a bankruptcy action less than one year before the plaintiff filed his FDCPA claim in federal court. *Id.* This Court held that the filing in bankruptcy court did not reset the statute of limitations, as it was simply an action that gave continuing effect to the bank's initial claim that it had interest in the mortgage, a claim it first asserted in the foreclosure action. *Id.*

In *Slorp*, this Court recognized that "[c]ourts have been extremely reluctant to extend the continuing-violation doctrine beyond the context of Title VII, . . . and we have never applied the continuing-violation doctrine to an FDCPA claim." *Slorp*, 587 F. App'x at 257 (internal citation and quotations omitted). In contrast to claims of a hostile work environment, which by their very nature involve repeated conduct, the initiation of an unlawful debt collection suit is a discrete act. *See id.* at 258. Plaintiffs' allegations against Defendants are like those in *Slorp* and *Smith*. Defendants did not commit new FDCPA violations every time they asserted the validity of the

mortgage throughout the various proceedings. Accordingly, Defendants' alleged violations are discrete acts, and the continuing-violation doctrine does not apply to Plaintiffs' FDCPA claims.

### C. Equitable Tolling

"The doctrine of fraudulent concealment allows equitable tolling of the statute of limitations where[:] 1) the defendant concealed the underlying conduct, 2) the plaintiff was prevented from discovering the cause of action by that concealment, and 3) the plaintiff exercised due diligence to discover the cause of action." *Fillinger v. Lerner Sampson & Rothfuss*, 624 F. App'x 338, 341 (6th Cir. 2015) (internal citation and quotations omitted).

Plaintiffs argue that their FDCPA claims warrant equitable tolling via the fraudulent concealment doctrine. Plaintiffs concede that this Court previously concluded that Defendants did not fraudulently conceal the loan document containing only T. Jodway's signature. Plaintiffs attempt to clarify that what Defendant concealed from them were the "action taken" notices required by 15 U.S.C. § 1691(d) of the ECOA. Plaintiffs claim that Fifth Third was required to notify Plaintiffs of the action it took with respect to each loan application. Plaintiffs allege that Fifth Third never disclosed to them which loan application Fifth Third had approved. Plaintiffs also allege that Richter committed further concealment by failing to produce the loan underwriting file, as requested in discovery. This alleged concealment only ended in 2016 when Plaintiffs obtained the HDMA data report, revealing through which loan application Plaintiffs had secured the mortgage.

This Court has previously "declined to rule on the question of whether equitable tolling based on fraudulent concealment applies under the FDCPA." *Smith*, 658 F. App'x at 274 (citing *Fillinger*, 624 F. App'x at 340-41). We still need not answer this question; even if we were to

extend the doctrine, Plaintiffs' case would fail because Plaintiffs do not sufficiently allege fraudulent concealment.

Plaintiffs fail to establish the factors required for the doctrine of fraudulent concealment. First, Plaintiffs state in their complaint that Fifth Third LLC reported its approval of the loan based on T. Jodway's income to the Federal Financial Enforcement Institutions Council, as required by the HMDA. A disclosure made in compliance with federal agency reporting requirements hardly constitutes concealment. Plaintiffs thus do not demonstrate that Defendants concealed their underlying conduct.

Second, Plaintiffs cannot show that the alleged concealment prevented them from discovering their cause of action. Plaintiffs admit that Defendants produced the HDMA data report four days before the state court summary disposition hearing on April 15, 2016. If, as Plaintiffs allege, the HDMA data report revealed that Fifth Third's mortgage was invalid because it was obtained in violation of the ECOA, then an FDCPA claim accrued at that time. However, Plaintiffs did not file their FDCPA suit until April 19, 2017, more than one year later. Thus, "[Plaintiffs] cannot successfully claim that Defendant's fraudulent concealment prevented [them] from discovering the theory and thus assert it offensively as an FDCPA claim within the statute-of-limitations period." *Smith*, 658 F. App'x at 274. Plaintiffs' fraudulent concealment argument fails.

### D. Additional Alleged Violations

In a final attempt to circumvent the district court's holdings, Plaintiffs allege, for the first time on appeal, that Defendants took other actions in violation of the FDCPA. Plaintiffs allege that Defendants collected on the mortgage debt through Chapter 13 Trustee disbursements made on May 4, 2016, June 1, 2016, and September 7, 2016. Plaintiffs also allege that A. Jodway had to post a $18,200 cash bond on August 7, 2016 to stay foreclosure and collection against her. These

disbursements and posting of the stay bond, according to Plaintiffs, were concrete injuries that triggered accrual of their claims, and occurred within a year of their April 19, 2017 filing date. Finally, Plaintiffs claim that a 2017 holding from the Michigan Court of Appeals in Plaintiffs' state law case serves as a trigger for the FDCPA statute of limitations. Plaintiffs therefore argue that Defendants failed to show that all their actionable conduct occurred outside of the statute of limitations.

Plaintiffs did not include these new allegations in their complaint, and they were not considered by the district court. Traditionally, "an argument not raised before the district court is waived on appeal to this Court." *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 552 (6th Cir. 2008). Two main policy goals justify this rule: to ease "appellate review by having the district court first consider the issue," and to "ensure[] fairness to litigants by preventing surprise issues from appearing on appeal." *Rice v. Jefferson Pilot Fin. Ins. Co.,* 578 F.3d 450, 454 (6th Cir. 2009) (quoting *Scottsdale Ins. Co.*, 513 F.3d at 552). Similarly, this Court "ha[s] consistently held . . . that arguments made to us for the first time in a reply brief are waived." *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010). Plaintiffs raise these allegations for the first time on appeal and in their reply brief. In accordance with our longstanding rules, we consider these arguments waived.

## II. Rule 11 Sanctions

### Standard of Review

"We review for abuse of discretion a district court's determination of sanctions under [] Rule 11 . . . . A court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Rentz v. Dynasty Apparel Indus.*, 556 F.3d 389, 395 (6th Cir. 2009) (internal citations and quotations omitted).

**Analysis**

This Court in *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 766–67 (6th Cir 2014), described Rule 11 of the Federal Rules of Civil Procedure:

> Rule 11 imposes on attorneys a duty to reasonably investigate factual allegations and legal contentions before presenting them to the court. Fed. R. Civ. P. 11(b). The threat of sanctions encourages keen observance of this duty. *See* [*Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997) ("Rule 11's ultimate goal [is] deterrence, rather than compensation . . . ."). But, the drafters of Rule 11 also included the safe-harbor provision to allow the nonmovant a reasonable period to reconsider the legal and factual basis for his contentions and, if necessary, to withdraw the offending document. *See* Fed. R. Civ. P. 11(c) Advisory Committee Notes (1993 Amendments). For similar reasons, the party seeking sanctions must effectuate service [of a copy of the Rule 11 motion] at least twenty-one days "prior to the entry of final judgment or judicial rejection of the offending contention." *Ridder*, 109 F.3d at 297. Failure to comply with the safe-harbor provision precludes imposing sanctions on the party's motion. *Id.*

Plaintiffs argue that the district court erred in granting Defendants' motion for sanctions because Defendants failed to comply with Rule 11's safe-harbor rule. *See* Fed. R. Civ. P. 11(c)(2). They claim that Defendants did not serve Plaintiffs with a copy of their motion for sanctions 21 days prior to filing it with the district court. Instead, Defendants sent Plaintiffs a warning letter, which Plaintiffs argue does not comply with the safe-harbor rule.

## A. Failure to Raise the Issue Below

Defendants acknowledge that prior to filing their motion, they served Plaintiffs with a letter in which they threatened to file a motion for Rule 11 sanctions unless Plaintiffs dismissed their lawsuit within 21 days, instead of sending a copy of the motion to Defendants as required by Rule 11. However, Defendants argue that by failing to raise their safe-harbor argument to the district court, Plaintiffs waived their right to do so on appeal.

As explained above, "[i]ssues not litigated in the trial court are generally inappropriate for appellate consideration in the first instance." *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541,

544 (6th Cir. 1996). However, this rule is not absolute, and this Court has discretion to consider limited exceptions, guided by the following factors:

> 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear and beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.

*Id.* at 545. The exceptions are "narrow," but they allow this Court to rule on a newly raised issue "that is presented with sufficient clarity and completeness for the court to decide the issue." *Fairlane Car Wash, Inc. v. Knight Enters.*, 396 F. App'x 281, 286 (6th Cir. 2010) (internal citations and quotations omitted). We most commonly do so "where the issue is one of law, and further development of the record is unnecessary." *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993).

In this case, no further development of the factual record is necessary, as both parties agree that Defendants sent a warning letter instead of serving Plaintiffs with a copy of their Rule 11 motion. The question of whether Defendants' actions satisfy the safe-harbor provision is one of law, and given our precedent (discussed below), proper resolution of this issue is clear and beyond doubt. Moreover, resolving this issue will best serve the interests of justice, as the district court imposed sanctions of $5,000 in attorneys' fees and costs on Plaintiffs. *Compare Shirvell v. Gordon*, 602 F. App'x 601, 607 (6th Cir. 2015) (declining to reach forfeited issue of imposition of sanctions when the district court had erroneously failed to adequately explain its decision to impose sanctions, when, *inter alia*, no monetary sanctions were imposed) *with Brickwood Contractors Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 398 (4th Cir. 2004) (en banc) (overturning sanctions despite sanctioned party's failure to raise the issue below, when the district court imposed monetary sanctions despite moving party's failure to comply with Rule 11 safe-harbor provisions).

Thus, although this Court rarely exercises its discretion to consider an issue not raised below, *Scottsdale Ins. Co.,* 513 F.3d at 552, we do so here.

### B. Safe-Harbor Requirement

As this Court has previously observed, Rule 11's safe-harbor provision explicitly requires formal service of a motion. *Penn, LLC*, 773 F.3d at 766–67. In reviewing the Advisory Committees' notes on the Federal Rule's 1993 amendment, this Court "ha[d] no doubt" that the explicit use of the word "motion" "definitionally excludes warning letters." *Id.* In *Penn, LLC*, we recognized the policy considerations of the safe-harbor provision, which included: reducing the volume of Rule 11 motions, formalizing due process consideration in sanctions litigation, and stressing the seriousness of a motion for sanctions. *Id.* "Permitting litigants to substitute warning letters, or other types of informal notice, for a motion timely served . . . undermines these goals." *Id.*

Thus, Defendants' warning letter does not satisfy Rule 11's safe-harbor requirement. We find that it was an abuse of discretion for the district court to grant sanctions against A. Jodway even though Defendants had not complied with the Rule 11's safe-harbor provisions.

### CONCLUSION

Because Plaintiffs' claims are barred by the FDCPA statute of limitations, we **AFFIRM** the district court's dismissal of Plaintiffs' complaint. And because Defendants failed to comply with the Rule 11 safe-harbor provisions, we **REVERSE** and **VACATE** the district court's imposition of Rule 11 sanctions.

**NALBANDIAN, Circuit Judge, concurring in part and dissenting in part.** I join the majority's opinion with one exception: this is not one of those rare or exceptional cases where we should exercise our discretion to consider an issue not raised with the district court. As a result, I would affirm the district court's Rule 11 sanctions. I write separately to explain why.

**I.**

Plaintiffs contend—for the first time—that Fed. R. Civ. P. 11's safe-harbor provision bars what are otherwise appropriate sanctions. Rule 11's safe-harbor provision requires a party to *serve* a motion for sanctions twenty-one days before it formally *files* the motion with the court. Fed. R. Civ. P. 11(c)(2). This provides the party "a reasonable period to reconsider the legal and factual basis for his contentions and, if necessary, to withdraw the offending document." *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 766–67 (6th Cir. 2014).

Plaintiffs are correct that Defendants failed to comply strictly with Rule 11. Defendants filed the motion for sanctions with the district court without first serving the motion. But Plaintiffs did not object under Rule 11's safe-harbor-provision. Instead, Plaintiffs doubled-down on their arguments and opposed the motion for sanctions (and the motion to dismiss) on the merits. Plaintiffs did not suggest to the district court that they needed the twenty-one days to evaluate the basis of their claims before responding (or changing their position). Thus, Plaintiffs waived the objection. *See Shirvell v. Gordon*, 602 F. App'x 601, 607 (6th Cir. 2015) (citing *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385 (4th Cir. 2004) (en banc)).

Our analysis should stop here. And we should "adhere to the general rule that an issue not raised before the district court is not properly before us." *Foster v. Barlow*, 6 F.3d 405, 409 (6th Cir. 1993). As the majority itself notes, we generally do not permit Plaintiffs to "circumvent the district court's holdings." (Maj. Op. at 10.) In other words, our rule on waiver "prevents a litigant

from 'sandbagging' the district judge by failing to object and then appealing." *Carson v. Hudson*, 421 F. App'x 560, 564–65 (6th Cir. 2011) (quoting *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985)). We should apply that rule here and affirm the Rule 11 sanctions.

## II.

The majority excuses Plaintiffs' failure to raise the safe-harbor provision in the district court. But Plaintiffs' failure to raise the safe-harbor provision does not fall under one of the limited, narrow, and rare exceptions to "our longstanding rules" on waiver. *See Carson v. Hudson*, 421 F. App'x 560, 564–65 (6th Cir. 2011). Quite the opposite. Plaintiffs' failure to object shows why the doctrine of waiver exists. By failing to object below, Plaintiffs prevented the district court from fixing the problem: the district court could have stricken the motion for sanctions with instructions to refile twenty-one days after Defendants served Plaintiffs with the motion.[1] *See* Fed. R. Civ. P. 12(f)(1). This simple solution would have guaranteed strict compliance with Rule 11.

And refiling the motion twenty-one days after service would have changed nothing. The majority suggests that an injustice occurred here because the district court imposed monetary sanctions. But this focus is misplaced. The potential injustice under the safe-harbor provision is not the imposition of sanctions or attorneys' fees per se. Instead, injustice occurs when the party asking for sanctions deprives another party of the "safe harbor" to which it is entitled. *Ridder v. City of Springfield*, 109 F.3d 288, 296–97 (6th Cir. 1997). This happens when a party waits until after the district court resolves the merits of the case to move for sanctions.[2] By this point, a party

---

[1] Indeed, the district court made other corrections by striking filings with instructions to refile. (*See, e.g.*, Order Den. Defs.' Appl. to File Mot. to Dismiss that Exceeds 25 Pages, R. 11 (instructing Defendants to "file a revised Motion to Dismiss within seven days of this Order"); Notice of Error (July 25, 2017) (striking Plaintiffs' improper subpoena, R. 19).)

[2] This injustice fits with our previous decision in *Penn*—which Plaintiffs rely on. In *Penn*, the party asking for sanctions first sent a warning letter. The district court then decided the case

can no longer avoid sanctions by withdrawing or changing its claims. Said another way, timing is everything under Rule 11. And "the 'safe harbor' provision is rendered a mere 'empty formality'" if the "party seeking sanctions [does not] leave sufficient opportunity for the opposing party to choose whether to withdraw or cure the offense voluntarily before the court disposes of the challenged contention." *Id.* at 297. Thus, Rule 11 ensures only that a party receive formal notice (including a copy of the motion itself) and an opportunity to change its position (on the merits) before facing sanctions.

But here, the timing shows that Plaintiffs suffered no prejudice. Plaintiffs, of course, cannot dispute that they enjoyed the full benefit of the safe-harbor provision: they received notice of possible sanctions (in a formal motion) *eight months* before the district court resolved the

---

on the merits (granting the defendant's motion to dismiss). *Penn*, 773 F.3d at 765. Only after the district court resolved the merits of the case did the defendant file and serve a formal motion for sanctions under Rule 11. *Id.* at 765–76. The plaintiff objected to the motion, raising the defendant's failure to comply with the safe-harbor provision as a defense. In response, the defendant asked us to rely on the warning letter (which it served before the district court resolved the merits) to satisfy the advanced notice requirement of Rule 11(c)(2). But we rejected this argument, explaining that "the 'safe harbor' period begins to run only upon service of the motion" because this, unlike a letter, "stress[es] the seriousness of a motion for sanctions and [ ] define[s] precisely the conduct claimed to violate the rule." *Id.* at 767 (quoting Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments)). Applying this rule, we affirmed the denial of sanctions because the defendant waited to serve and file its motion for sanctions until "twelve days *after* the court dismissed [the] claims." *Id.* We explained that "this late service deprived [the plaintiff] of the safe-harbor period's protection." *Id.* In other words, the plaintiff had no opportunity to withdraw or correct his complaint before the district court decided the merits of the case.

The same injustice occurred in *Brickwood*, 369 F.3d at 388, 398. The district court first granted summary judgment in favor of the defendant—and only later did the defendants file and serve a motion for sanctions. *Id.* at 388. The Fourth Circuit excused the plaintiff's failure to object under the safe-harbor provision because "the defendants did not seek sanctions until after summary judgment had been granted against [plaintiff], thus making it impossible for [the plaintiff] to reconsider its position in the face of a sanctions request." *Id.* at 398. Thus, in both *Penn* and *Brickwood*, each plaintiff suffered prejudice because the defendant failed to serve and file a formal motion for sanctions before the district court resolved the underlying merits. But here, Defendants filed and served the motion for sanctions well before the district court resolved the merits.

underlying merits. And unlike *Penn* and *Brickwood*, there is no indication that strict compliance with the safe-harbor provision would have changed anything. *See supra* n.2. Indeed, Plaintiffs admitted this at argument—agreeing that even if Defendants had complied with the safe-harbor provision, they would not have relinquished their claims. The procedural timeline shows this:

- April 19, 2017 – Plaintiffs filed their complaint.

- May 19, 2017 – Defendants sent a letter to Plaintiffs, citing Rule 11(c)(2), demanding dismissal of the complaint. If Plaintiffs refused, the letter explained that, in 21 days, Defendants would move for sanctions.

- June 13, 2017 – Defendants filed the motion to dismiss the complaint.

- July 3, 2017 – Defendants should have served Plaintiffs with the motion for sanctions.

- July 24, 2017 – Defendants served and filed the motion for sanctions with the district court.

- August 8, 2017 – Plaintiffs responded to the motion for sanctions but raised no procedural objection under Rule 11's safe-harbor provision. Instead, Plaintiffs opposed the motion on the merits.

- March 30, 2018 – The district court resolved the underlying merits, dismissed the complaint, and imposed sanctions against Plaintiffs.

So even with notice of potential sanctions, Plaintiffs proceeded on the merits and lost. This shows the futility of Plaintiffs' argument. As the procedural history shows, serving a copy of the motion on July 3, 2017—in addition to serving a copy on July 24, 2017—would have been a hollow act. It still took the district court eight months to resolve the underlying merits of the case (and the motion for sanctions)—significantly longer than the twenty-one days afforded under Rule 11. Thus, Plaintiffs enjoyed the protections of the safe-harbor provision: they had a sufficient opportunity to decide whether to withdraw the complaint (and avoid sanctions) or proceed on the merits (knowing that they faced potential sanctions). *See Ridder*, 109 F.3d at 297. Plaintiffs chose

the latter—and there is no compelling reason to excuse this decision and reward Plaintiffs' sandbagging.

This is not a rare or exceptional case that warrants application of our narrow exceptions to waiver. Nor is this a case like *Penn* and *Brickwood*—where the victorious defendant surprised the plaintiff with sanctions after the district court resolved the underlying merits.

I respectfully dissent.